Judge Underwood
delivered the opinion of the Court.
The chief question in this cause, turns on the validity of the acts of Samuel Hopkins, deceased, acting in the character of attorney in fact, for Walter Alves. On the 27th of September, 1807-, Alves executed a power of attorney, vesting authority in Hopkins, to sell 494 3-4 acres of land, in Henderson’s grant; “also, all his, said Alves’part, or share of the north west quarter section of lot No. 5, north of Green river, in said grant, being the same that was allotted to James Hogg, by the company in the deed of partition, forty-one forty-eighth parts thereof, being by him conveyed to George Hogg, and by him to said Alves. The deeds which show the above conveyances, being recorded in the office of. Henderson county, the legal title to the remaining seven forty-eighth parts still remaining in the heirs and representatives of said James Hogg, of whom said Walter is one, &c.” The power proceeded as follows: “and I authorize my said attorney to sell my said forty-one forty-eighths of said lot, say 845 acres, as it is at present undivided, ar to obtain any equitable division thereof, agreeably to law, and sell it all together or partially, as he may think best; and I further empower said Samuel Hopkins, to sell for credit or otherwise, and for such sums of money as he may think proper, and I do hereby hind myself to ratify and confirm whatever my said attorney shall legally do in my name, -jn virtue of the premises.” On the 13th o,f October, *286 1808, said Hopkins “for himself, and as attorney for Waiter Alves,” entered into a contract with Martin Vanada and Charles Winpee, in which it is stated that “Hopkins, for himself and as attorney, &c. hath sold all the land they own or possess in Henderson’s grant, in lot No. 5, on the north side of Green river, lying north east of a line to be run across the said lot, No. 5, to begin at Griffith’s pond, &c. . The agreement further says, “Samuel Hopkins obliges himself, his heirs, &c. for himself and .as attorney as aforesaid, to make or cause to be made to them, (to-wit: Vanada and Winpee,) a good title, in fee simple, to the said lands, with general warranty, and it is signed and sealed thus, “Samuel Hopkins for himself, and as attorney. for W. Alves,” (seal). The contract between Hopkins for himself and as attorney in fact for Alves* and Vanada and Winpee, does not specify any certain quantity of acres, as having been sold, but Vanada and Winpee were to have all the land owned by Hopkins and Alves, included within the boundaries of lot No. 5, lying north east of a line to run across said lot No. 5, “to begin in Griffith’s pond,” &c. A survey having been executed to ascertain the quantity, it was found that there were 325 acres, which the bill alleges were sold by Hopkins, as attorney in fact for Alves. Hopkins and Alves being dead, and neither-having conveyed the land to Vanada, (who by a division of the land, jointly bought by him and Winpee, had become entitled to the said 325 acres,) he filed his bill against the heirs of Alves and Hopkins, and the administrator of Hopkins, with a view to have a specific exemption of the contract, and for. general relief.
Grounds upon which the heirs of Alves resist Specific performance.
The heirs of Alves do not resist a specific execution of the contract, upon any plausible ground, other than the want of authority on the part of Hopkins, under-his power, to bind them or their ancestor, by the contract as made and entered into with Vanada and Wi.npee. The points relied on by them are: 1st. That the power of attorney did not authorize Hopkins to sell less than Alves’ entire interest in lot No. 5, without first having procured a division and a severance of his interest from that of his co-tenants; in which event it is conceded he might have sold less than the entirq interest: And, 2d. That the contract as signed *287 by Hopkins, does not impose any obligation on them or their ancestor.
jtu]e as t0 validity of the aots 0f those dealing with ^e^t:0j“Jers °e be con*y strued.
The court fluctuations & mutations,? in language,
In relation to the first point, the defendants, heirs of Alves, insist that Hopkins departed from and exceeded his power, and consequently, that his acts are void, We readily admit, that whatever act an agent does, unauthorized by the authority vested in him, is not binding on his principal, and wé also concede that agents may be limited and restricted to specified and particular acts, so that they may be deprived of all discretion. To enforce these doctrines, it was Useless lo cite authority. They are based upon tile Common sense of all men, and engrafted in every civil code; and were it otherwise, the principal’s most valuable rights might be sacrificed by the ignorance or wickedness of an agent, in whom the principal bad no intention to vest any discretion, or to give any power but to carry into effect positive instructions. Whenever one man presents himself as the agent of another, it is the duty of all who may have transactions with him, in his representative character, to inquire into the extent of his authority, and they must deal with him at their' peril. But all powers conferred must be construed with a view to the design and object of them, and the means most usual and proper for carrying their design and object into effect, having respect to the language Which the maker of the power employs, to Convey his meaning and intent.
The language of all nations is liable to fluctuate with the changes that take place, in the progress of time, in their affairs and condition. A word or a phrase which has a definite meaning, and which will be universally understood in the same sense by all who speak the language, from various causes, may loose its original signification, and ultimately have a meaning attached to it, essentially different. It is the duty of courts to take notice of these mutations in language. Without doing so, they cannot observe the great and paramount rule of effectuating the intentions of men in all their transactions. Accordingly, in the case of Lampton vs. Haggard, 3 Monroe, 149, this court have interpreted the expressions “Kentucky currency” and “currency of the state,” which are equivalent, to mead Very different things at different times.
The power of attorney to Hopkins, examined.
Á general power to sell, is not restricted by modes of selling pointed out specifically, which do not, necessarily, abrogate or confine the general pow-fer.
Had Hopkins authority vested in him, by the power1 to sell less than the entire interest of Alves, in lot No 51 If he had not, then he has conferred no right on Vanada, and imposed no obligation on Alves. The question must be answered by construing the power according to the rule prescribed, that is, with a view to the design and object of the power, ánd the means most usual and proper for carrying the design and object into effect, ascertaining these by the popular signification of the language employed at the date of the powerj by its maker, to convey his meaning. The first sentence in the power, relative to lot No. 5, authorizes Hopkins to sell all Alves’ part or share of the north west quarter section of lot No. 5. Were this the only sentence in relation to this land, there could be no doubt of Hopkins’s authority to sell, not only the forty-one forty-eighths, conveyed to him by George Hogg, but also the interest he held in the residue, as one of the heirs of James Hogg. By subsequent sentences^ the power States that the attorney may sell forty-one forty-eights of said lot¿ say 845 acres, as it was undivided, or to obtain a division and sell it altogether or partially^ as he may think best. It is contended that those last sentences qualify the first, and deny to the attorney the power to sell the interest of Alves, held as one of the heirs of James Hogg, and also confine the attorney to making a sale of the whole 845 acres, as it stood, undivided, at the date of the power, to one or more purchasers, in a single contract, at the same time¿ or to a sale of Alves’s interest altogether, or in parcels, after a division shall have been obtained.
There is no express declaration on the face of the power, which shows an intention on the part of Alves, to limit and restrict, by these latter sentences, the operation of the grant of the power in the first instance, to sell the entire interest. The argument in favor of such restriction's founded on the supposition that the authority to sell, in the particular manner pointed out¿ excludes the idea that a sale can be effected in any other way. We are of opinion that the maxim “eaipressio unius csl exclusio alterius,” does riot apply. Such a construction would tend to nullify the grant of power to sell the entire interest, first given, which does not prescribe any rule for the government of the attorney$■ *289 \u selling. All the grants of power can stand together by a construction of the instrument giving effect to all its parts, and one more congenial with the intention of Alves, to be collected from considering the general import of the whole instrument, than that contended for by the appellee’s counsel. It is this, as authority had been previously given, without any restriction, to sell 494 3-4 acres’, part of Thomas Hart’s lot, No. 7, and as the first sentence in relation to his, (Alves’) interest in lot No. 5, is equally extensive, and as thé authority to sell both is so far placed upon the same footing; he intended to make no difference between them; but as others had a very small interest with him in the last tract, he gave the power to have their interest separated from his, if the attorney should deem that trouble and the expense incident to it; useful, in the accomplishment of theobjéct in view, to-wit: the sale of the land; and added the expression, “sell it altogether or partially, as he may think best,” not for the purpose of restricting power already vested,but tb satisfy all purchasers that in any event; his attorney in fact was completely authorized to sell; Without restriction. Moreover, as the heirs of James Hogg owned a small part of the land, purchasers might make that an objection; if so, Hopkins was vested with power to obviate it by procuringa division. Hence the power to procure á divisipn was inserted, through abundance of caution; to enable the attorney to obviate difficulties which might be started by those wishing to purchase; without any intention todimit the genera! power to sell, previously vested. This view is fortified by the unlimited discretion given Hopkins, as to price and credits. Believing that there is no less authority in Hopkins; by the power to sell Alves’ interest in lot No. 5, than there is to sell his interest in No. 8, it is still to be decided whether Hopkins could lawfully sell a smaller quantity than the entire interest: This brings us to the consideration of the means which may be employed to effectuate the power.
In determin-inS whether Welded his authority, thfi court is bound to consider the usual mode, in which the object to be effected is attained. To deny the means, is to defeat the end.
*289 When a power is given to do thing, the use of the means to accomplish .it are included and necessarily granted likewise. These, according to the rule aireaay prescribed, should be such as are most usual and *290 which are proper to accomplish the thing intended to be done. They should be such as are ordinarily used by prudent, discreet men, in doing similar business. The courts must notice the transactions and business of society, and from their knowledge, ex-officio,determine on the usual and proper adaptation of means to accomplish an end, for which* power is vested in an attorney in fact. Hopkins was authorized to sell twa tracts of land* one.of 494, the other of 845 acres; was he bound to sell by entire tracts? His letter of attorney does not so direct. Is it usual for those wishing to sell lands, having so much in a body, to sell by entire tracts, or to divide them so as to suit purchasers, leaving the part unsold in convenient form for future sale, when a purchaser may present himself? We have no doubt such has been the common practice of prudent, discreet men, in managing their own estates; and if so, an agent acting under a general power to sell, may da the same thing. The situation of the country affords' strong reasons in support of such practice, on the part of owners and their agents. Two hundred acres of land will make a comfortable farm; a large portion of' the land-holders of the country do not own more; and many who wish to buy land, are not able to pay for more; unless, therefore, Hopkins had power to sell less than an entire tract, he was placed by his principal, in a condition in which he was unable to act, according to the circumstances by which he was surrounded, and the general practices of the country. To put such a construction on the power as would result in a denial of the usual means to accomplish the end, would be to make the power ineffectual. We have no doubt built did authorize Hopkins to sell either tract in parcels* and that his discretion was confided in as it respects the quantity of either tract he might sell. It is conceded that there are many cases where an agent would not be authorized to divide and cut up the thing to be sold, but that he would be bound under a general power to sell the entire thing. The principles already advanced, indicate when it would be proper to take the one course or the other. We do not coincide with the circuit court in the opinion, that Hopkins had no authority to sell less than the whole 845 acres, until .Alves’s interest was severed from that of his co-tenants -
Opinion of the circuit court overruled.
Hopkins to Vanada and Winpee, only ^mself and°f ^lves.
The cases in 57 reviewed,’ ’
Butitis urged, that Hopkins sold to Vanada and Winpee, 325 acres, by metes and bounds, and thus he sold land, which in part belonged to Jas. Hogg’s heirs, as no division had been effected between them and This view of the subject is not warranted by the written contract, entered into, between Hopkins, Vanada and Winpee. By that contract, Hopkins, for himself and Alves, only sells the land they owned or possessed in lot No. 5, north east of a line,' to be run across the said lot, &c. If James Hogg’s heirs had any interest in lot No. 5, north east of the contemplated line, they retain it yet, and we perceive no objection to decreeing a conveyance of Alves’s interest, north east of that line, to Vanada’s heirs, and leaving them and Hogg’s heirs to settle their interests in common, if such shall be created, upon the principles of law, applicable to such cases.
The contract signed by Hopkins, states, that the conveyance is to be made by deed, with general warranty. It is contended, that this is unauthorized, by the power, and 7 Johnson, 390, and 5 Johnson, 57, are-relied on as authorities, to establish the position. The case in 7 Johnson, was that of an authority, given to sell a ship. It was special. The agent practised a fraud in the sale, and the question was, whether the principal was liable for it. The court held the negative, and very properly. A special delegation of power, to sell a ship, in the same manner that the owner might, gave no authority to practise a fraud, for which the principal would be liable. The agent therefore having exceeded his authority, was responsible for his fraud and not his principal. There is a distinction between the acts of a general agent, constituted by parol and known by his general conduct in the business of his principalj and those of a special agent with power to do a particular act; a p.ower to make representations is said to be necessarily implied by such general agency, and if they be falsely and fraudulently made,it is said the principal shall be answerable. In these doctrines, we find-nothing decisively applicable to the present case. They have grown out of mercantile transactions, and there is strong reason for holding the principal liable for the frauds of his agent, in all cases where an authority to make representations can be implied. The *292 case in 5 Johnson is more analogous to the present. In that case, it was held, that an authority to sell and to execute conveyances and assurances in the law, of the lands sold; and where no power was given to hind the principally covenants, that a covenant of seisin, inserted in the deed executed by the attorney, was void. The reason assigned for it by the court, is, that as a conveyance or assurance, is good and perfect, without either warranty or personal 'covenants, they are not necessarily implied, in an authority to convey. There is no reference to authorities, in support of this case, and it may be well doubted whether in this - state it can be regarded as sound law, to the extent insisted on. The court state, in the case in 5 Johnson, that no power was given, to bind the principal by covenants. If the letter- of attorney, in that- case, contained a clause limiting the agent’s power, in express terms, and for-j bidding him to attempt binding'- the principal by personal covenants, we readily admit, that all such covenants, inserted in the deed were void: but if the letter of attorney, was'merely silent on the subject, then we doubt the correctness of the opinion as applicable to similar transactions in this state,
A contract for land not binding, unless in writing A power to ‘sellf silent as to execution of bond or deed, or other writing, nugatory ; unless ex m termini, the agent has power to bind his principal, by writing, to make the purchaser a sufficient deed, ■upon the payment of the purchase money.
The power executed by Alves, authorizes Hopkins, to sell. It says nothing about Hopkins executing conveyances of the title, or bonds for the title. It-gives Hopkins, unlimited discretion, as to credits. The statute of Frauds, requires contracts, relating to the sale of land, to be reduced to writing. When Hopkins made a contract of sale under the power of Alves, to make it obligatory, under the statute, it must be reduced to writing, either by an executory contract or by deed, passing the title. If the power to sell, does not necessarily import a power to convey, or the power to execute a tills bond or other executory contract, binding Alves to make a title, then his lettei of attorney, to Hopkins, although solemnly executed, would have no practical and binding effect. To consider it a nullity, would be absurd. How far then did it go in vesting. Hopkins with power to bind Alves by written contract? We cannot give it less effect, than to authorize Hopkins, in consideration of the sum, which the purchaser may promise to pay, to give a title bond in the name of Alves, binding him, on the payment of *293 the money, to make a sufficient title. What kind of deed or conveyance, would such a bond require? The casexif Fleming vs. Harrison’s devisees, 2 Bibb, 171; furnishes the answer, It would be a deed with warranty. And there is the strongest reason, founded on moral fitness andjusti.ee for the opinion, a covenant to convey land, does not create and vest in the covenantee, a legal estate in the land; but it invests him with a legal right to demand such an estate, and unless he can get such an estafe, he may vacate the contract, and recover the purchase money. If then, he is to accept a deed, by which his covenant is satisfied, it should be such a deed, as would, in the event of a paramount title, ousting him, give all the right to recover the purchase money, which existed on the covenant, before it was satisfied, by the acceptance of the deed.
A power “tu sell” land, implies a power, to bind the principal to convey, with general warranty, unless there be restraining words.
The power of attorney, did authorize Hopkins to stipulate for the conveyance of the legal estate. If Alves did not intend to go that far, he was vesting a colourable power in Hopkins, by which to deprive men of their money, without responsibility on his part; no one would so understand the power from its general tenor and language. Hopkins having power to contract for the conveyance of the legal title, had therefore authority to stipulate for a conveyance by deed, with general warranty. Such would have been the legal result, without an express stipulation to that effect, had his contract with Vanada and Winpee, only covenanted to convey the legal title. The letter of .attorney sets up a legal title to the lands which Hopkins was authorized to sell in Alves. They are lands conveyed to him and descended to him. It is this legal title which he authorizes Hopkins to sell, and it is the legal estate, lie ought to assure by deed with general warranty. Such a construction does him no injury, and we think it warranted by law. The case of Fugate vs. Hansford’s executors; 3 Littell, 262, shews that an instrument expressive of a contract of sale, although it may not stipulate to convey, will justify a court of chancery in decreeing a conveyance. If it were then conceded, that Hopkins, qnder the power was not authorized to convey, yet as his right to sell is unquestionable, a court of chancery, by bringing Alves *294 or his heirs before it, will compel them to do, by coin veying, that which will give effect to sales made by Hopkins.
If an agent sell land and add covenants, not warranted by his authority, the purchaser may, at his election, enforce so much of the contract as conforms to the authority, or claim a revision of the whole, if the principal will pot enter into the covenants
The signing self, and as attorney for personally’, and though exemption of the power, as will waroeHor^n decreeingaspecifioperforexecutory1 & contract, which it evitlle heirs of W. Alves.
*294 The stipulation in Hopkins’s contract, to convey with general warranty, is not a departure from his. power. But even if it were, we are not prepared to admit, that the whole contract was vitiated by it, and rendered a nullity. On this point, the case of Dehart, &c., vs. Wilson &c., decided by this court, at the April term, 1828, is cited. There a particular authority was given to execute an injunction bond conditioned, as required by law. The court decide, that the bond actually executed by the agent, differed in the condition of it, substantially, from the condition prescribed by law. Imposing on the principal, in the opinion of the court, a liability, different from that which he authorized his agent to impose, it was therefore, not binding. But here a power to sell land is given; no particular form is presci’ibed for the instruments which the agent may execute as evidence of his sales. If therefore, in any such instrument, he shows what land he did sell for his principal, and it be the land he was authorized to sell, and. then proceeds in the same instrument, to bind his principal to do an act not warranted by the power, it seems to us, that the principal may well be coerced to perform that part, wherein the agent had power to bind him. In such a case, the purchaser or covenantee, might well resist a specific execution of the contract, because, he could not get all which his contract stipulated he was. to have; but when he is willing to accept a part only, and that part which the agent had authority to sell or to contract for, we see no ground upon which the principal can object. In such cases, the doctrine of Coke may be safely relied on, that, “where a man doth that which he is authorized, and more, it is good for that which is warranted, and void for the rest.” If then, the stipulation to convey with general warranty, exceeded the power, we are of opinion, that the only effect it should have ought to be an exhoneration from the warranty.
The second question relates to the manner of signing the contract by Hopkins. It is contended by the *295 fcounsel for the appellees, that it is the contract of Hopkins alone, and that it cannot be enforced upon Alves, or his heirs. That Hopkins is personally bound by the contract, from the manner of its execution, we will not question. We might concede, that an action of covenant upon it, for failing to convey, or cause to be conveyed, would entitle the covenantees to recover against Hopkins, as well for the land, owned by Alves, as that owned by himself. But it does not thence follow, that a suit in Chancery, may not compel Alves, or his heirs to a specific execution. The rule that an attorney, in executing an authority, should do it in the name of the person giving the power, and not in the name of the attorney, is laid'down as a correct one by Paley, on Agency, 152; and Coke Lit. 258, a. and we have no doubt of its propriety; but we have notbeen able to find any adjudged case, applicable to an executory contract, forbidding the cháncellor to interpose, to aid a. defective execution of a power, when the defect consists in the difference between signing the principal’s name by his attorney, and signing the attorney’s name fir the principal. In executed contracts, such as the case of Harper vs. Hampton; 1 Harris and McKenney, 175 (note) and Frontin vs Small, 2 Raymond 1418, courts have held deeds invalid, which were executed in the name of the attorney for the principal, regarding such deeds as the acts of the attorney, and not the acts of the principal. But the case of Harper vs. Hampton; referred to, was not decided by the court.of appeals of Maryland, in which it was pending, at the date of the note referred to, and how it was finally disposed of, we know not. The case of Onion’s lessee vs Hall, to which the note relative to the case of Harper vs. Hampton is attached, is an authority in support of the validity of a deed, executed by signing thus, “Roger Matthews attorney in fact, for the said Anna Wriothesley,” and which in its commencement,purports tobe a deed between said Anna, and Wm. Brown The signing in this case, bears a strong analogy to the signing by Hopkins for Alves, and it may be remarked, that the contract which is sought to be specifically executed, shews upon its face, beyond all doubt, that Hopkins in styling himself attorney for Alves,- did not merely design *296 thereby, a description of his own person, but that Alves, was intended to be affected by it. It is obviously an attempt on the part of Hopkins, to execute his power, by entering into an executory contract. Whatever adjudications therefore, may have taken place on trials at la>w, in regard to executed contracts where attorneys have not observed the proper form, in the execution of their authorities, we do not feel ourselves constrained to apply the rigid rules, to be found in some of them, to executory contracts, in a chancery proceeding like the present. It is the chancellor’s proper element, to decree a specific execution of agreements, to assist defective conveyances, and to aid defective executions of powers. In Sugden*on Powers, 344, it is laid down, that “at law, the omission of any circumstance required to the execution of a power* was deemed fatal; but equity, where there was a good or a valuable consideration interposed its aid, and supported the defective execution of the power.” “A power of attorney, is a common law authority.” Sugden, on Powers, 1. If the contract between Hopkins, and Vanada and Winpee was invalid at law, so far as Alves and his heirs are concerned, in chancery, it is otherwise; There it ought to be enforced. The statute of Frauds, does not prohibit our doing it. The terms of the sale are evidenced by writing, signed by the agent for the principal, and we cannot perceive any mischief likely to result to society from enforcing a specific execution in such cases.
The compl’ts. in the court below were entitled to a specific performance.
We are therefore of opinion, that ttié circuit court erred in refusing relief to the complainants, now plaintiffs in error; they were entitled to a specific execution of the contract of their ancestor, conformably with this opinion. Had it been proper to'dismiss the bill, as to the heirs of Alves, the court ought not to have dismissed it as to Hopkins’ administrator and heirs. If the plaintiffs in error, could not get the land from Alves’ heirs under the prayer for general relief, a decree should have gone against the representatives of Hopkins. But it is not necessary to state more on this point, as we are of opinion, the plaintiffs in error were entitled to a conveyance from Alves’ heirs, for the interestof their ancestor in their land described in thé contract sought to be enforced;
Crittenden and Denny, for plaintiffs; Mayes, for defendant.
’The decree of the circuit courtis reversed, and the cause remanded with instructions, to render a decree not inconsistent with this opinion. The must recover their costs.