### LYON *v.* POLLOCK.

1. A., at the commencement of the late rebellion, owned property in San Antonio, Texas, consisting principally of real estate and stock in a gas company. Apprehending that his life was in danger in consequence of his avowed hostility to secession, he fled from the country, and, by a power of attorney, authorized B. to sell the property for whatever consideration and upon such terms as he might deem best, and to execute all proper instruments of transfer. B. took possession of the property, which he retained until July, 1865, when he gave the charge of it, with the business and papers in his hands, to C. A. thereupon wrote to C., " I wish you to manage [my property] as you would with your own. If a good opportunity offers to sell every thing I have, I would be glad to sell. It may be parties will come into San Antonio who will be glad to purchase my gas stock and real estate." *Held,* that C. was thereby authorized to contract for the sale of the real estate, but not to convey it.

2. A deed executed to a purchaser, though invalid as a conveyance, may be good as a contract for the sale of the property described therein.

APPEAL from the Circuit Court of the United States for the Western District of Texas.

The appellant, Lyon, in 1873, recovered judgment in the Circuit Court of the United States against the appellees, Pollock and wife, in an action for two parcels or lots of land situated in the city of San Antonio, in the State of Texas. Thereupon the appellees brought the present suit on the equity side of the court to enjoin the enforcement of the judgment, and to compel a conveyance to them of the title to the land; or, if that relief could not be granted, to obtain a decree for the value of their improvements, in accordance with a statute of the State.

The bill of complaint states, as grounds for relief, that the judgment was obtained upon the trial of the legal title, and

that their rights are of an equitable nature, constituting an equitable title to the land. It sets forth that on the 24th of August, 1865, Lyon, being owner of the lots, executed an instrument, a copy of which is appended and made part of the bill, authorizing one I. A. Paschal to sell any and all real estate of which he, Lyon, was then seised in the county of Bexar, in Texas, and that the premises in controversy are a portion of this property; that previously, and up to the 1st of July, 1865, one W. A. Bennett had been the attorney and agent of Lyon, having full power to manage, control, and sell all or any portion of his property, real or personal; that about this time Bennett transferred the business of his agency to Paschal, and communicated the fact to Lyon; that the latter thereupon executed the instrument mentioned; that after this transfer and the delivery of the instrument, Paschal was treated and recognized by him as his duly authorized agent and attorney; and, as such, he sold the premises in controversy to the complainants in October, 1865, for the sum of $425, and executed a conveyance to them.

The bill further states that Lyon subsequently made no claim to the lots, but acquiesced in their sale, and did not attempt to exercise any control over them, nor pay any taxes on them; that the complainants at once took possession of the lots, and have since been in their undisturbed use and enjoyment, claiming the same as their own, and have paid the State, city, and county taxes, and have made permanent improvements on them of the value of $6,250; that the lots sold for their full value; and that Paschal used the money received from the sale, with Lyon's consent, in part payment of assessments on stock owned by him in the San Antonio Gas Company, a corporation existing in the county of Bexar.

The instrument mentioned in the bill as authorizing Paschal to sell Lyon's real estate is a letter of Lyon, of which the following is a copy, omitting immaterial portions: —

"MONTEREY, Aug. 24, 1865.

"I. A. PASCHAL:

"MY DEAR SIR, — I am just in receipt of a letter from Mr. Bennett, informing me that he has placed all my papers for safe-keeping in your possession. In better or safer hands he could not

have given them. The position you have occupied during the past four years of the war is a very enviable one, as glorious as it has been dangerous. I congratulate you upon the issue. I am sure you have no reason to regret your decision to abide by the Union. . . . I am unable to go to San Antonio at present. My family are sick in the North, and demand my presence there. Mr. Kinney's death leaves a large business in my hands to be settled. I wish you to manage as you would with your own. If a good opportunity offers to sell every thing I have, I would be glad to sell. It may be parties will come into San Antonio who will be glad to purchase my gas stock and real estate. I shall be glad if you find time to write to me. If you will, give me a description of affairs as they exist at present. I shall probably remain here two months yet. . . . I enclose a letter for my wife. It is impossible to send letters by Matamoras. The road has been blockaded for a long time. If you have a regular mail, I shall be greatly obliged if you will mail this letter; if no mail, will you do me the favor to send by private hands to New Orleans?

"Most respectfully yours,

"I. L. LYONS."

The previous power of attorney to W. A. Bennett authorized him to take charge of and control all Lyon's property of every kind, real and personal, in the county of Bexar, in Texas, and to sell and convey the same upon such terms and upon such conditions as he might deem best, and to collect and receipt for all debts, rents, and profits due or to become due to Lyon, and to represent him in all matters relating to the stock of the gas company.

The answer of Lyon to the bill admits that on the 24th of August, 1865, he was the owner of the lots in controversy; that prior to the 1st of August of that year, W. A. Bennett was his lawful agent and attorney, authorized to manage his property, and sell it or any part of it; and that prior to the 24th of that month he transferred his papers to Paschal for safe-keeping; but it denies that the letter of attorney from him to Bennett contained any power of substitution. It admits the writing of the letter by him to Paschal acknowledging the receipt of Bennett's letter, informing him of the transfer of the papers; but denies that he conferred, or intended by it to confer, any authority to sell the property, or that he afterwards

treated or recognized Paschal as his agent or attorney with such authority. It also denies that Lyon ever ceased to regard the lots as his property, or that he has ever acquiesced in their sale; and avers that he was prevented from taking possession of the property after the sale only from fear of bodily harm. It also avers ignorance by Lyon of the payment of taxes on the property or of the alleged improvements; and that the payment of the taxes, and the improvements, if made, were without his knowledge or consent.

In explanation of his absence from Texas, the answer states that, when the rebellion broke out, it was known that he was a Union man, opposed to the secession movement, and that his life was in consequence threatened by a secret combination of men known as "the Knights of the Golden Circle," and that he was compelled to leave the country secretly and in haste; that after the war was at an end he believed that his life would have been in imminent danger had he returned to Texas and attempted to recover his property. It avers that if the money received by Paschal were appropriated for the payment of assessments upon stock of the San Antonio Gas Company, such disposal of it was unauthorized and without his knowledge or consent. It also refers to the judgment at law recovered by him in the Circuit Court of the United States for the lots in controversy, and insists that it settled all questions between the parties as to the property in suit.

To the answer a replication was filed and proofs were taken, which showed that rumors had reached Lyon as early as 1867 that sales of some of his real estate had been made by Paschal, and that assessments had been levied on his stock in the gas company, and generally tended to establish the allegations of the bill. In the opinion of the court below they sufficiently established the equitable right of the complainants to a conveyance of the premises from Lyon. A decree directing such conveyance, with a perpetual injunction against the enforcement of the judgment for the possession of the lands, was accordingly entered, from which the present appeal is taken.

*Mr. Philip Phillips* and *Mr. W. Hallett Phillips* for the appellant.

No counsel appeared for the appellees.

MR. JUSTICE FIELD, after stating the case, delivered the opinion of the court.

This case turns upon the construction given to the letter of Lyon to Paschal, of the 24th of August, 1865. That letter clearly did not authorize the execution of a conveyance by Paschal in the name of Lyon to the purchaser. Its insufficiency in that respect was authoritatively determined in the action at law for the lands; the instrument executed by Paschal as the deed of Lyon being held inoperative to pass the legal title. The question now is, was the letter sufficient to authorize a contract for the sale of the lots? To determine this, and give full effect to the language of the writer, we must place ourselves in his position, so as to read it, as it were, with his eyes and mind. It appears from his answer, as well as his testimony, that he was in great danger of personal violence in San Antonio, shortly after the commencement of the rebellion, owing to his avowed hostility to secession, or at least that he thought he was in such danger. He apprehended that his life was menaced, and was in consequence induced to flee the country. He possessed at the time a large amount of property, real and personal, in San Antonio. This he confided to the care of his partner, Bennett, to whom he gave a power of attorney, authorizing him to take charge of and control the same, and sell it for whatever consideration and upon such terms as he might judge best, and execute all proper instruments of transfer; and also to collect and receipt for debts due to him. Bennett took possession of Lyon's property and managed it until July, 1865, when he transferred it, with the business and papers in his hands, to Paschal, and at once informed Lyon by letter of the transfer. It was under these circumstances that the letter of Lyon to Paschal, which is the subject of consideration, was written. Its language is: " I wish you to manage [my property] as you would with your own. If a good opportunity offers to sell every thing I have, I would be glad to sell. It may be parties will come into San Antonio who will be glad to purchase my gas stock and real estate."

Situated as Lyon then was, a fugitive from the State, it could hardly have been intended by him that if propositions

to purchase his property or any part of it were made to Paschal, they were to be communicated to him, and to await his approval before being accepted. He was at the time at Monterey, in Mexico, and communication by water between that place and San Antonio was infrequent and uncertain; and he states himself that it was impossible to send letters by Matamoras, as the road was blockaded. Writing under these circumstances, we think it clear that he intended by his language, what the words naturally convey, that if an opportunity to sell his property presented itself to Paschal, he should avail himself of it and close a contract for its sale.

His subsequent conduct shows, or at least tends to show, that such was his own construction of the letter, and that he approved, or at least acquiesced in, the disposition made of his property. He must have been aware, from the laws of the State, which he is presumed to have known, that taxes were leviable upon his property, and that unless they were paid the property would be sold for their payment; yet he confessedly took no steps from 1865 to 1873 to meet them, and thus prevent a forced sale of his property; a course perfectly natural if it be conceded that the property was in charge of an agent, with power to manage and sell it as his judgment might dictate. His indifference, also, after rumors reached him that a sale of his property had been made by Paschal in 1867, can scarcely be explained upon any other hypothesis. The same may be said of his inattention to the payment of the assessments upon his stock in the San Antonio Gas Company, of which he had received intimations. From the time Paschal took charge of his property, in 1865 to 1873, a period of eight years, he certainly manifested, if his own story be accepted, a most extraordinary want of interest in regard to his real property, of great value, situated in an unfriendly community, subject to taxation, and liable to be sold if the taxes were not promptly paid; and also in regard to his personal property, consisting of shares in the San Antonio Gas Company, of great value, liable to assessments, and to sale if the assessments were not paid when due. It is much more reasonable to suppose that he knew of the sales made of the real property and of the assessments on the shares, and that he was undisturbed by

the reports which reached him, because he considered that the sales were made and the assessments paid from the proceeds, by his authorized attorney.

The testimony of Bennett tends also to corroborate this view. He states that he knew from his correspondence with Lyon that he treated Paschal as his agent for the sale of his property. The conduct of Lyon, as expressive almost as any language which he could use, cannot, of course, change the construction to be given to the words contained in his letter to Paschal, but it tends to strengthen the conclusion as to the intention of the writer.

Holding the letter to confer sufficient authority to contract for the sale of Lyon's real property in San Antonio, there can be no doubt of the right of the complainants to the relief prayed. The deed executed to them by Paschal in the name of Lyon, though invalid as a conveyance, is good as a contract for the sale of the property described in it; and is sufficient, therefore, to sustain the prayer of the bill for a decree directing Lyon to make a conveyance to them and enjoining the enforcement of the judgment at law.

*Decree affirmed.*

NOTE. — In *Lyon v. Hernandez,* which was argued by the same counsel as was the preceding case, MR. JUSTICE FIELD, in delivering the opinion of the court, remarked: This case involves the same question decided in *Lyon v. Pollock* (*supra,* p. 668), and on the authority of that decision the decree herein is affirmed.