SMITH et al. v. ALLEN et al., *Appellants*.

1. **Principal and Agent**: SALE OF LAND : CONTRACT. The owner of real estate situated in Kansas City, in this state, wrote from Chicago, Illinois, where he resided, to his agent, at Kansas City, in terms as follows: "Your letter received last night ; I will leave the sale of the lots pretty much with you ; if the party, or any one, is willing to pay sixty dollars per foot, one-third cash and balance one and two years, interest seven per cent. per annum, and pay commission of sale, I think I am willing to have you make out a deed and I will perfect it ; I think you have the deeds to those lots, have you not? If you think better to try spring market, hold till

Smith v. Allen.

then ; the party buying may want the abstract in full, which I believe I have at Rockford, and will sell much less than cost. The above price is only for the present. * * * It is understood that if I pay the taxes now due, that hereafter I am relieved from any taxes." *Held*, that the letter authorized the agent to make a contract for the present sale of the lots.

2. ———— : ————. Where such agent has the power to sell, he has the authority to sign an agreement in his principal's name and to bind him thereby.

*Appeal from Jackson Circuit Court.*—HON. T. A. GILL, Judge.

AFFIRMED.

*Gage, Ladd & Small* for appellants.

(1) Allen's letter of November 19, 1879, did not authorize the execution of a contract of sale. *Rowan v. Hyatt*, 45 N. Y. 138. (2) But even if the letter be construed more strongly against Allen, and it be found therefrom that he had determined to sell at the price named, still no authority was conferred on Webster to make and sign a contract of sale. *Bosseau v. O'Brien*, 4 Biss. 395 ; *Taylor et al. v. Merrill*, 55 Ill. 55 ; *Duffy v. Hobson*, 40 Cal. 240 ; *Bissell v. Terry et al.*, 69 Ill. 184 ; *Stewart v. Wood et al.*, 63 Mo. 252 ; Story on Agency, sec. 82 ; Pomeroy Spec. Perf., pp. 113, 114, and note. (3) The contract is not pursuant to the terms of the letter of November 19, and is not authorized by it. · The terms of the sale prescribed by the letter were one-third cash. The terms of this contract were ten dollars cash. If this be a contract of sale, it was wholly unauthorized.

*C. O. Tichenor* and *P. S. Brown* for respondents.

(1) The action is upon a contract, and the question of the authority of an agent to sign the same is one of evidence and not of pleading. *Stein v. Repy*, 46 Mo. 606. (2) Under the statute of frauds, the note or mem-

orandum could only be signed by the party, "or his agent authorized in writing." (3) Whether the agent had authority to make the contract was a question of fact. The trial court found that he had authority and the Supreme Court will defer to such finding. *Chapman v. McIlwrath*, 77 Mo. 43 ; *Chouteau v. Allen*, 70 Mo. 336. (4) The construction of Allen's letter should be adopted which is most beneficial to the plaintiffs. *Clemens v. Patten*, 34 Mo. 584 ; *Hoffman v. Ins. Co.*, 32 N. Y. 413. (5) It was sufficient to establish the agency by direct evidence showing his appointment, but it is sufficient, if, from all the circumstances in evidence, he is shown to have authority. *Hall v. Jones*, 69 Mo. 587 ; *State, etc., v. Gates*, 67 Mo. 143 ; *Edwards v. Thomas*, 66 Mo. 482 ; *Geylin v. De Villeson*, 2 Hous. 319 ; *Pringle v. Spaulding*, 53 Barb. 17 ; *Johnson v. Dodge*, 17 Ill. 441. (6) The letter, by its terms, authorized the agent to execute a contract of sale. *Vanadas v. Hopkins*, 1 J. J. Marsh. 285 ; *Talbot v. Bowen*, 1 A. K. Marsh. 436 ; *Lyon v. Pollock*, 99 U. S. 668 ; *Minn. v. Willoughby*, 3 Minn. 234 ; *Farris v. Martin*, 10 Humph. 496 ; *Matherson v. Davis*, 2 Cald. 453 ; *Duffy v. Hobson*, 40 Cal. 244 ; *Bosseau v. O'Brien*, 4 Biss. 396. (7) The letter of November 19, not only authorized Webster to make the contract, but it was of itself a sufficient note or memorandum to comply with the statute, and when plaintiffs notified Webster of their acceptance, Allen was bound, even though Webster had not drawn up and signed a further memorandum. Waterman on Spec. Per., secs, 231, 232, 233, 234 ; *O'Neil v. Crain*, 67 Mo. 250 ; *Richey v. Tenbroek*, 63 Mo. 569. And the letter would be sufficient, though addressed to a third party. *Moore v. Mountcastle*, 61 Mo. 424. In *Tallman v. Franklin*, 14 N. Y. 584, it is held that the letter to an agent, and the memorandum made by the agent, can be construed together as a contract. See *Briggs v. Munchon*, 56 Mo. 467.

RAY, J.—The defendant, Loren S. Allen, at the date of the principal transaction under consideration, was a resident of Chicago. About, or during the year 1868, he became the owner of certain lots in Kansas City, which are the subject of the present controversy. From that date until about the close of the year 1879, one Webster, a real estate agent in Kansas City, was Allen's agent to look after said property, to pay the taxes thereon and to find him a purchaser therefor, the same being for sale during said years. The plaintiffs, Smith & Keating, were partners composing a real estate firm, residing in and dealing in real estate in Kansas City. About November 1, 1879, one Rickard, who was, it seems, also a real estate agent in Kansas City, and acted in this matter in connection with Webster in trying to find a purchaser for Allen's said lots, opened negotiations for the sale thereof with said plaintiffs, by telling them that Webster had said lots for sale at and for the price of sixty dollars per foot. Smith & Keating offered Webster, through Rickard, fifty-five dollars per foot, which proposition Webster submitted to Allen, who rejected the same. Webster, a few days thereafter, wrote Allen that he thought these parties offering the fifty-five dollars per foot would give sixty dollars per foot. Thereupon, Allen wrote a letter of date November 19, 1879, which letter is as follows:

"HYDE PARK, Nov. 19, 1879.

"FRIEND WEBSTER: I am sick and not able to write; your letter received last night; I will leave the sale of the lots pretty much with you; if the party, or any one, is willing to pay sixty dollars per foot, one-third cash and balance one and two years, interest seven per cent. per annum, and pay commission of sale, I think I am willing to have you make out a deed and I will perfect it; I think you have the deeds to those lots,

have you not?   If you think I better try spring market, hold till then; the party buying may want the abstract in full, which I believe I have at Rockford, and will sell much less than cost.   The above price is only for the present.   Excuse this letter.

"Truly yours,

" (Signed)                                L. S. ALLEN.

"It is understood that if I pay the taxes now due, that hereafter I am relieved from any tax."

On November 22, Rickard and Webster went to the office of Smith & Keating and submitted to them the said letter of November 19, from Allen.   Smith & Keating accepted the proposition, paid the ten dollars mentioned, and took from Webster the following agreement and receipt, which is the contract sued on:

"KANSAS CITY, Mo., November 22, 1879.

"Received of Messrs. Smith & Keating the sum of ten ($10) dollars as earnest of the purchase money of one hundred and seventy-two feet on Fourth street, running through to Third street, in block twenty-three, Old Town, now City of Kansas, Missouri, being part of lots 225, 226, 227, 228, 229, and 230, block twenty-three, and the old alley running north and south through said block twenty-three, which price is to be sixty dollars per foot on Fourth street, running from street to street, to be paid one-third cash, and one-third in one (1) and the remaining third in two years, with seven per cent. interest on the deferred payments, secured upon the property.   The sale being understood to be null, unless the title to the real estate is satisfactory to said purchaser.

"L. S. ALLEN,
"By ED. H. WEBSTER."

Smith & Keating then took and have ever since retained possession of Allen's letter of November 19.   After

making said agreement, Webster wrote Allen the following letter, dated the same day :

"ED. H. WEBSTER, REAL ESTATE AND LOAN BROKER, }
    "NO. 603 MAIN ST.,
        "KANSAS CITY, Mo., Nov. 22, 1879. }

" *Dr. L. S. Allen, No. 103 State St., Chicago, Ills.:*

"MY DEAR SIR: Your favor, November 19 inst., duly received. I do not like to assume the responsibility of deciding whether it is best to sell your property now. I should feel inclined, if it was mine, from the class of improvements going in that direction, to sell. I can't guess whether it would be better (that is, I can't determine), to wait until spring or sell now. I have agreed with Messrs. Smith & Keating to take the ground, subject to your approval, at sixty dollars per foot, upon the terms named in your letter, one-third cash, one-third one and one-third two years, with interest at seven per cent. They do not wish to pay for the abstract, claiming that you should furnish the abstract of title as you already have it. I think this a good price for the present, although it may bring a better price by waiting. Please advise me by wire at my expense.

                    "Yours truly,
                        "ED. H. WEBSTER."

Allen answered the same by the following letter :

                "CHICAGO, Nov. 28, 1879.

" *E. H. Webster:*

"DEAR SIR: Yours of date of twenty-second and mailed twenty-sixth, came to me this morning ; and I am undecided about taking the offer of sixty dollars per foot, though think, on the whole, I will take my chances for a spring sale. Perhaps, I miss it, but from the present outlook, I think it will bring more if local prejudices don't kill the market. I should have answered

by wire, but the letter was too old before I got hold of it, and will wait the mail.   You will please keep me posted from time to time, and in due time make a sale.

"Truly yours,

"L. S. ALLEN."

Webster replied thereto, as follows :

"ED. H. WEBSTER, REAL ESTATE AND LOAN BROKER, }
"No. 603 MAIN ST., }
"KANSAS CITY, MO., Dec. 6, 1879. }

"*Dr. L. S. Allen, No. 103 State St., Chicago, Ills.:*

"DEAR SIR : Upon the receipt of yours, nineteenth ult., I notified a Mr. Rickard (real estate agent) who was negotiating for Smith & Keating for the purchase of your land on Third and Fourth streets, and gave the letter to him to show to Messrs. S. & K.   Within a day or two he came and wanted to  pay me  something upon the purchase, as he said they wished to take it upon your terms.   I told him that I would not receive anything until I saw Messrs. S. & K., and explained to them that I did not pretend to have any authority to sell, except that which was embraced in your letter of the nineteenth of November, which they had in their possession, and that if I accepted a payment, I did not wish them to say that I was not a man of business if you did not confirm the sale.   I called upon them, discussed the matter fully, and accepted ten dollars and made an agreement and wrote you letter twenty-second November.   After receipt of yours declining, I notified them, but they insist upon the contract and threatened to sue for specific performance of their contract made with me. . I think they only wish to try and scare you into making a deed, and am satisfied my contract amounted to nothing.

"Yours truly,

"ED. H. WEBSTER."

The above constitutes the entire correspondence set out in the record. About December 20, 1879, the defendant, Hews, who resided in Kansas City, called upon Allen, in Chicago, with a letter of introduction from Webster, and, upon the next day, Allen sold the lots in suit to Hews, at and for the price of sixty dollars per foot, $2,300 being paid down at that time, and the balance about the first of May following, when the deed was made.

Mr. Ladd testified, that in February or March, 1880, as attorney for Hews, he examined the title to this property and looked over the papers on file in this suit, including the contract now sued on, and that he went to the plaintiff, Keating, and read said letter of date of November 19, and that he afterwards, and about May 3, 1880, paid to Allen, for Hews, the balance of the purchase money, which amounted to something over $8,000.

The action is one for the specific performance of said alleged contract, and was begun in the circuit court of Jackson county, February 5, 1880, against the defendant Allen. The petition sets forth the contract as follows:

"That on said twenty-second day of November, 1879, and for a long time previous thereto, Edward H. Webster, of the City of Kansas, in said county, was the duly authorized agent of defendant; that previous to said twenty-second of November, 1879, to-wit: on or about the nineteenth day of November, 1879, said defendant, in writing, by him duly signed, duly authorized and empowered the said Webster, as such agent, in the name and stead of defendant, to enter into contract in writing with, and sell to, said plaintiffs the whole of said described real estate, at the price of sixty dollars per front foot, on the terms of one-third cash on delivery of deed, and the remainder in two equal payments, at one and two years, with interest thereon at the rate of seven per cent. per annum; that in pursuance of the power

and authority so granted to said Webster, the said Webster, on said twenty-second day of November, 1879, as such agent, in the name of said defendant, did enter into a written agreement with plaintiffs, whereby defendant, through and by said agent, duly sold to plaintiffs all the aforesaid described real estate, at and for the said price of sixty dollars per front foot, being in the aggregate the sum of ten thousand, three hundred and twenty dollars, payable as follows: one-third, to-wit: three thousand, four hundred and forty dollars, cash, upon the delivery by defendant to plaintiffs of a general warranty deed to said real estate ; and one-third, to-wit: three thousand, four hundred and forty dollars, in one year from the date of the delivery of such deed ; and the remaining one-third, to-wit: three thousand, four hundred and forty dollars, in two years from the date of the delivery of such deed, said deferred payments to bear interest at the rate of seven per cent. per annum, and that said defendant was to execute and delivery such general warranty deed to plaintiffs without delay, and thereupon they, plaintiffs, were to pay said cash payment and execute their promissory notes for said deferred payments, and a deed of trust on said described real estate securing the payment of said notes, and deliver such notes and deed of trust to said defendant."

The answer of defendant Allen was filed February 14, 1880, and was a general denial. Upon motion of Allen, the defendant Hews was made a party defendant, who, on June 16, 1880, filed his separate answer, admitting the ownership of Allen on the said November 22, 1879, and denying all other allegations, and further answering and setting up that he was a *bona fide* purchaser, for value, of the property in suit and without notice of said alleged contract, which was denied by the replications of plaintiffs. The court found the issues and gave judgment for plaintiffs, and defendants have appealed therefrom to this court.

Smith v. Allen.

The substantial controversy in this case is, whether Allen's letter, of November 19, authorized Webster to make the contract of date November 22. The letter is to be read in the light of the surrounding facts and circumstances. Allen, who was a non-resident, had taken the property for debt, in the first instance, and had, at all times, been anxious to sell and dispose of the same. The letter, it is true, was not addressed to the plaintiffs, but to Webster, who had his property for sale and was engaged in the business of selling real estate in Kansas City. Allen had recently rejected an offer from them of fifty-five dollars per foot, and he wrote said letter in reply to a second letter from Webster, to the effect that these parties would, he thought, give sixty dollars per foot. The appellants say that the entire effect of the letter is to say to Webster: "You can talk to the parties, find out what they will do, if they will pay sixty dollars per foot on the terms stated, see if they will buy my abstract, and write me the result, and give me your advice, and prepare and send me a deed to execute, and I think, if you so advise, I will sign it." But is this the true import thereof, when fairly and naturally read, and such as would readily be placed thereon by the people of common understanding in the usual and ordinary walks of life? Could Allen have apprehended that it would have meant this and no more, if shown to one who was desirous of purchasing the property and was satisfied with the price and terms given? If we may venture to indulge a paraphrase thereof, in illustration of what we think is the just and true construction and interpretation thereof, we would do so somewhat as follows : " I am willing that these parties, or any one, should have the lots at that figure, viz. : sixty dollars per foot, upon the following terms : one-third cash, and balance, one and two years, with seven per cent. interest per annum. They must pay your commission on sale. I will pay the tax now due, and must be relieved from liability for taxes

hereafter. If you can get this price and these terms, you may sell now, and I am willing to have you make out a deed and I will perfect it. But I do not require you to do so. If you think I had better try the spring markets, you are authorized and at liberty to hold on until then. I leave the sale of the lots (that is, whether now or in the spring), pretty much with you. If the party buys and wants an abstract in full, I will sell mine at much less than cost."

The letter indicates that Allen does not mean to decide, peremptorily, which course was best to pursue, whether to sell the lots at that time, or to wait for an advance of market in the spring. On this question he is disposed to defer to the judgment of his agent, Webster, to which we are to ascribe and refer, we think, whatever of doubt may be implied by the language: "I think I am willing to have you make out the deed." Allen, at the date of the letter in question, was in Chicago, sick and unable to write. Webster, his agent, was in Kansas City, where the property in question was situated; he was a real estate agent and familiar with the value of the lots, the state of the market, and its probable rise or fall. These facts, to some extent, at least, may serve to explain and show why it was that Allen was willing to leave the sale "pretty much" to Webster; why it was that he thought he was willing to have him "make out" a deed, which he says he "will perfect;" and, also, why it was that he directed Webster to "hold till spring," if he thought he had better try the spring market. Why this concluding paragraph to the letter? It reads: "If you think I had better try spring market, *hold till then*," Why tell him to *hold* till spring if he had not authorized him to sell before, or thought he had done so? The injunction to hold till spring, if the agent thought best, clearly implies authority in the agent to sell before, if he thought best. This, evidently, was the interpretation Webster put upon the

letter at the time, otherwise, he would not have signed the contract, and such, we think, is the fair import and true construction of the letter in question. Webster's subsequent letters of attempted explanation to the contrary are, we think, entitled to but little weight. The same may be said of Allen's subsequent letter. It is, we think, evidence of his vacillation, rather than the meaning of his original letter. It is manifest from the letter that Allen is satisfied with the price named, and determined to accept the same, if the agent, in the exercise of the discretion given him, concludes to make a present sale of the lots. It is plain that the trial court, under the facts and circumstances in evidence, so found, and so construed the letter, and we are not disposed, under the circumstances, to set aside its finding, or to say that it misconstrued the letter. As to all matters of fact, we are accustomed, even in equity cases, to defer somewhat to the finding of the trial court. *Chapman v. McIlwrath,* 77 Mo. 43, and cases cited.

The question then arises, whether an agent of this description, with a power thus conferred upon him to sell, has the power to make and sign such an agreement or memorandum in writing of the terms of sale, so as to be valid and binding upon his principal. Webster was authorized to sell at the price and upon the terms mentioned, and this implied authority to do everything necessary to complete the sale, and to make it effectual and binding. If the principal, Allen, had been conducting the trade in question, it would have devolved upon him (who was the party to be charged) to sign a memorandum or note in writing, evidencing the sale, before a valid sale thereof could have been made. And if it was thus incumbent upon the principal to do this to effect a valid sale, then, we think, in the case of an agent, authorized to make the sale, the power to sign such an agreement, either in his own name or in the name of his principal, is necessarily im-

plied, for this is not only the usual and ordinary means of making and evidencing a sale, but is an indispensable pre-requisite, under the statute, to its validity. The agent could not, without so doing, negotiate and conclude a valid sale at the price and upon the terms offered, which was the purpose to be effected and contemplated by said letter and by said agreement, which may, we think, be read together. Without further discussion or elaboration of the question, the weight of authority is, we think, in favor of the power of the agent to sign an agreement, in writing, in the principal's name and to bind him thereby, where such agent has the power to sell conferred upon him in the manner and under the circumstances of this case. *Stewart v. Wood*, 63 Mo. 256; *Lyon v. Pollock*, 99 U. S. 668; *Johnson v. Dodge*, 17 Ill. 441; *Lawrence v. Taylor*, 5 Hill, 107; *Hawkins v. Chace*, 19 Pick. 502; *Pringle v. Spaulding* 53 Barb. 17; 2 Parsons on Cont. 291; Story on Agency, chap. 6.

A further objection is made, that the terms of the sale prescribed by the letter were one-third cash, and the terms of the contract were ten dollars cash, and that the contract is, therefore, not pursuant to the terms of the letter. The ten dollars was, as recited in said contract, paid as earnest of the purchase money. Said letter did not contemplate or require that the cash payment of one-third was to be made immediately upon the terms of the sale being agreed on, but such payment was to be cash, upon the delivery of the deed by Allen, and the delivery of the notes for the deferred payments and trust deed by the purchasers. The agreement is, we think, in substantial conformity with said letter.

It is further urged in appellants' behalf, that the acts and conduct of all the parties show that no valid and binding contract was made, and that they did not consider the written agreement valid and binding. Webster, it is true, wrote to Allen thereafter that he had

made the sale subject to his approval, although this reservation was not expressed in the contract. Webster was not introduced as a witness on the trial, and the evidence of both plaintiffs and of Rickard is to the contrary. They all say, in substance, that Webster came to the office with Allen's letter, which he submitted. That he said he, Webster, was then authorized to sell at that price ; that Allen was a peculiar and vacillating man, and that if they wanted the property they had better close the trade, and that upon their acceptance of the proposition, Webster wrote out the agreement himself, which, as we have seen, contains no reservation that the sale is made subject to Allen's approval. Nor can we see anything sinister, or even inappropriate, in the fact that Smith & Keating retained possession of the letter, as well as said contract. Nothing appears from the evidence to show that it was kept against the permission of Webster. And further, plaintiffs were about to conclude a purchase (which they afterwards did conclude) of a strip of ground seventeen feet wide, adjoining the lots in controversy, whose value depended almost entirely upon their acquiring the title to the Allen lots. Whether Allen was bound or not, depends upon the original and not the subsequent letter, and we do not see how Webster could help believing he had made an agreement, valid and binding, after stating that he had the authority to sell, and advising the plaintiffs to close the trade at once, and signing the same, and receiving the ten dollars paid thereon, and preparing the memorandum himself, and making an agreement with the plaintiffs, fixing his commission on the sale at two hundred dollars. And it is clear, we think, from the plaintiffs' evidence in the case, that they supposed before they saw the letter, and independent of the authority therein conferred, that Webster had the property for sale at sixty dollars per foot, and was authorized to sell the same at that price. We see nothing in the record

proving their want of faith in the transaction. They have been at all times ready and willing to perform their part thereof, and have promptly insisted upon a like performance thereof by defendant Allen.

Nor do we understand that the defence of said defendant, or of his co-defendant, Hews, is based or founded in any alleged fraud in obtaining said contract, but is based, so far as Allen is concerned, exclusively upon the ground that the contract sued on was never, in fact, made or authorized. We do not see that the further defence of defendant Hews, viz. : that he was an innocent purchaser for value and without notice is seriously urged or presented. Hews was not introduced as a witness on the trial. Notice of this suit was filed for record and recorded December 6, 1879. Hews bore a letter of introduction to Allen in Chicago, from Webster, and agreed upon the terms of the sale with him December, 20, 1879, but the sale of the lots, which was to be for cash, was not completed until May 1, 1880, at which time Mr. Ladd, acting for Hews, paid the balance, $8,000, of the purchase money. Mr. Ladd testified on the part of the plaintiffs, that he examined the title for Hews, and, in doing this, examined and read over the papers on file in this action, including the contract of sale, and that he went to plaintiffs' place of business, and there read over Allen's said letter of November 19.

Upon the trial, the court found and declared that the agreement, mentioned in plaintiffs' petition, ought to be specifically performed and carried into execution, inasmuch as defendant Hews, at the time of his purchase, did so with full knowledge of said plaintiffs' said agreement and the contents thereof, and, therefore, ordered, adjudged and decreed that the title to the land, mentioned in plaintiffs' said agreement and petition, be, and the same is, hereby divested out of defendant Hews, and vested in the plaintiffs, Smith & Keating, and it, also, further ordered and adjudged,

the plaintiffs, Smith & Keating, to deposit with the Kansas City Savings Association the said purchase money, specifying the sum, for the use and benefit of said Hews. The real parties to the contest at the trial were Smith & Keating on the one side,. and the said Hews on the other, and the court, on the facts, found the issues for the plaintiffs and gave judgment for specific execution of the contract accordingly. Believing, as we do, that the trial court properly construed the letter, and properly disposed of the case upon the evidence, and finding no error in its action or ruling, we, therefore, affirm the said judgment. All concur. Black, J., having been of counsel, did not sit in the cause.