## Malone v. McCullough.

1. PRINCIPAL AND AGENT—PAROL AUTHORITY TO SELL REAL ESTATE.—
As the statute existed in 1886 an agent might be authorized by parol to make a valid sale of real estate, binding the owner to execute a perfect title thereto to the purchaser, if the authority so given was not merely to negotiate a sale, but also to execute a written contract to the purchaser, stating the terms, conditions and limitations of the sale. But mere authority to find a purchaser of a parcel of ground at a certain price, and thus earn a commission, gives no authority to bind the owner by a written contract of sale, and a person dealing with such an agent is bound, at his peril, to learn the extent of his authority.

2. AUTHORITY TO FIND A PURCHASER NOT AUTHORITY TO CONTRACT.—
During a street conversation between an owner of real estate and a person about to engage in the business of selling lands on commission, the latter requested the former to give him something to sell, at the same time inquiring his prices on various properties, including the lot in controversy, which were given, with the promise of a commission for the sale of the lot. Such a transaction merely constituted the agent a broker, with authority to hunt a purchaser willing to buy at the price named, but without power to contract.

3. SPECIFIC PERFORMANCE OF AGENT'S CONTRACT — PROOF REQUIRED.—
When it is sought to compel an owner to convey a parcel of real es-
tate, with covenants, on the contract of an agent, the plaintiff is held
to strict proof of the agent's authority. If it rests in parol it must
be clearly expressed and satisfactorily established. A failure to make
any inquiry as to the extent of the agent's authority, which could
have easily been learned, leaves the plaintiff without equities in his
favor.

### Appeal from Superior Court of Denver.

THE appellant, Mrs. Mary C. Malone, filed her bill against
the defendant, George McCullough, and sought the refor-
mation and specific enforcement of the following agree-
ment: "Denver, Colorado, March 3, 1886. Received $200
of Mary C. Malone as part payment of $16,000 for lots 1, 2,
3 and 4, block 241, East Denver; balance of $15,800 to be
paid on delivery of warranty deed, to be clear and unincum-
bered. If the title to same is not furnished, the $200 is to
be refunded. GEORGE McCULLOUGH. By DARROW & HOW-
ARD, Agents."

The execution of this paper was averred, but it was
alleged in the bill that the true block number was 244, and
that there was no block 241 in East Denver containing
either these lots or lots of those numbers which were owned
by McCullough, and that the mistake occurred because the
map which was referred to at the time of the making of
the contract was either defaced or defective, and the num-
bers were not accurately deciphered.

There was very little controversy upon this proposition,
and the court found that the mistake was a mutual one,
and that the wrong number was really put in by mistake,
and decreed the reformation of the contract, and the inser-
tion of the figure 4 in the place of the figure 1.

The whole controversy turns upon the employment of
the agent, Darrow, by the defendant, McCullough. The
only two witnesses who testify concerning the original
transaction are Mr. Darrow, the agent, and Mr. McCullough,

the defendant. McCullough's testimony is specific, and is as follows:

"Personally, I think, I only mentioned this property to him, or rather he asked me about it on one occasion. It is my impression that that was in December last. That conversation occurred on the corner of Arapahoe and Sixteenth streets. We were standing on the edge of the corner, at the junction of the streets, right in front of the Union Bank, about seventy-five feet from my office. Have occupied that office and the adjoining room between three and four years. In January I was engaged in the real-estate business. The conversation was this: I was going up from Lawrence street towards Arapahoe. Darrow was coming across Arapahoe street. Just before I turned he called to me and said he wanted to speak to me. Stated he had just formed a partnership with a man named Howard, that had some money; that he was going to quit politics and attend to business and rustle around, and wanted to know if I couldn't help him; that I had helped him a good deal in the past. I asked him what I could do. He said, ' Give me something to sell.' I asked him what he wanted. He first inquired about some lots out on Stout street, then in regard to some lots in Schinner's addition, asking me in different places, and among others asked me: ' What will you take for your lots up Sixteenth street?' In fact all his questions were in the same way. When he came to this property on Sixteenth I told him I would take $16,000. 'Well,' he says, 'I suppose there is about a thousand dollars' commission in that; that amounts to a good deal.' And I told him 'No;' that I would treat him as I had always done; that I was always ready to divide. That portion of it was all done in a laughing way, and that was the sum and substance of the conversation. He said he was going into the brokerage business — his old business. He either told me they had opened an office or would in a few days open an office in the next square. The point he designated was fully four hundred feet from my

office. Some years previous, before he was alderman, he had made sales and purchases for me. Never had any other or further conversation with Darrow respecting this matter prior to the time when he came to my office, and Berger and Kountze were present. I suppose I had given this piece of property to twenty."

Darrow's testimony is very brief, and, in so far as it bears upon the question of his authority to sell, is in these words: "McCullough had previously told me to sell the lots at $16,000, and I said: 'I suppose at $16,000 you will give me a thousand commission.' He said: 'Not by a darn sight. I will give you a regular commission.'"

There is other testimony given in the case which is to a greater or less extent confirmatory of the proof that McCullough had previously authorized Darrow to sell the property; but there is nothing which bears directly upon the power of the agent to do that which he undertook.

That part of the consideration or purchase price which was paid at the time of the execution of the contract, and its delivery to Mrs. Malone, was paid to Darrow & Co. by a check to their order, and so far as the record discloses it never came to the defendant.

The court rendered a decree reforming the contract according to the prayer, and dismissing the rest of the bill. From this decree the plaintiff appealed.

Messrs. STEELE & MALONE, for appellant.

Messrs. BENEDICT & PHELPS and A. E. PATTISON, for appellee.

BISSELL, C. Most of the difficulties which usually embarrass actions brought to enforce the specific performance of contracts are without the limits of this controversy. Whether the court below exercised a proper judicial discretion according to the rule laid down by the best authorities, or whether the power was broad enough to cover all the

conditions expressed in the contract, need not be adjudicated.

The agreement is in writing, upon apparently ample consideration. It bears the signature of the defendant by procuration. Whether the defendant can be held evidently depends on the authority of the agent who signed his name. This authority is denied. If the proofs showed no such grant of power to the agent as gave him authority to execute a contract which obligated the defendant to convey, the court rightly refused to decree a performance. That the authority was a delegation by parol makes no difference. Under statutes like those of Colorado that has always been held sufficient. That the legislature has wisely changed the rules so as to require the authority to be expressed in writing cannot affect the judgment to be rendered. As the law was when the contract was signed, the signature is good, if only the authority be sufficient. The leading cases both in England and in this country agree upon this proposition. This in no wise lessens the burden put on the plaintiff, who sues upon a contract thus executed, to show that the person who signed as agent was authorized not only to negotiate the sale, but also to conclude in writing a binding contract with the terms, conditions and limitations expressed in the one sued on. Thus far there is no discrepancy in the cases. But whether an "authority to sell" necessarily carries with it the power to do whatever may be necessary to execute a binding contract to convey is a difficult inquiry.

A conclusion upon this question is not essential to the decision of this case. No power to sell, such as the cases require where it is held to include the power to execute a contract, was given to the agent here. In most cases, whether decided one way or the other, it was apparent that the agent was given specific authority to do either the general business of his principal or the particular thing which he did, and which was the subject of the litigation. In no sense can that be said to be true here. Darrow was neither the gen-

eral agent of McCullough, with full powers, nor was he constituted a special agent for a specific purpose, unless he might be said to have been given the right to find a purchaser, and earn a commission. Such an agent must strictly pursue his authority; and any person dealing with him is bound at his peril to learn the extent of that authority. If he fails to observe that duty, he voluntarily puts himself in a position to suffer loss, and must bear the consequences. There is no pretense that there was any other delegation of authority to Darrow than what can be said to result from the conversation on the street. Darrow wanted something to sell, and he asked the price of numerous properties belonging to the defendant. These were given. There is no conflict of proofs,— no assertion of agency on one side, denied on the other. The court is simply required to decide whether in the terms of this conversation, in view of the circumstances under which it was held, there can be found what will amount to a delegation of authority authorizing the agent to make a binding contract to convey with covenants of warranty and against incumbrances. There is no pretense of express authority, unless it was there delegated. In terms none was conferred. There was nothing in the language which warranted the agent in believing that it was granted to him, or which would justify another in so concluding, had the whole conversation been repeated to him. It simply constituted Darrow a broker, with the right to hunt a purchaser willing to buy at the price named. No other reasonable construction can be put upon the language employed, even with the use of all possible intendments of construction against the owner. It is equally true that there is nothing in the circumstances from which greater authority could be fairly or reasonably implied. There are no equities to be urged in favor of the contracting purchaser. Seller, buyer and agent are all residents of the same city, and have offices within a few hundred feet of each other. The authority of the agent was the subject of easy inquiry and settlement. The representative of the buyer was a

lawyer and fully cognizant of the danger of dealing with unauthorized agents. In hunting the agent to make that contract, he passes within less than a block of the owner's office, but makes no effort to satisfy himself upon this vital proposition. Under such circumstances no forced or strained construction will be put upon language in order to clothe the agent with authority. It is apparent that there was no intention to constitute Darrow an agent with authority to contract. No such agency was necessarily created; nor are there any equitable considerations from which such an agency ought to be inferred. When the authority rests in parol, it must be clearly expressed and satisfactorily established. There is ample authority in well-considered cases for these principles. *Lauer v. Bandow*, 43 Wis. 563; *Milne v. Kleb*, 44 N. J. Eq. 378; *Morris v. Ruddy*, 20 N. J. Eq. 236; *Duffy v. Hobson*, 40 Cal. 240; *Rutenberg v. Main*, 47 Cal. 219; Fry, Spec. Perf. § 353.

With this view of the case it is wholly unnecessary to determine whether an agent to sell, specifically appointed for the purpose, or clothed with general powers, would have power to make a contract containing the conditions expressed in this one.

This much is true: when it is sought to hold a principal bound to convey, and bound to convey with covenants, an incumbered piece of property, by virtue of the contract of an agent, the plaintiff should be held to strict and full proof of ample power. This plain duty was not met by the proofs in this case. This is an insurmountable obstacle to the plaintiff's recovery. As is apparent from the preceding discussion, the decision is placed on the broad ground of the want of authority in the agent to execute the contract on which the suit was brought. It is a sound and reasonable conclusion, fairly deducible from the record. The court below, according to its decision which is found in the record, preferred to rest its conclusion upon the want of that fairness and equity of circumstance which must exist to warrant the court in decreeing specific per-

formance. It would be unprofitable to enter into an extended discussion to sustain or overthrow that conclusion. There are no findings of fact upon which the judgment is predicated, nor is it manifest what particular testimony the court relied on to support his decision. The result in no manner conflicts with this determination of the case. It involves no necessary conflict with the reasons assigned for the judgment of this court, nor can it be seen that the trial court entertained any different ideas concerning the agent's authority. The judgment might readily be supported upon either hypothesis. In whatever aspect the cause is viewed, the plaintiff is not entitled to any greater relief than that which was granted her. The judgment should be affirmed.

RICHMOND and REED, CC., concur.

PER CURIAM. For the reasons stated in the foregoing opinion the judgment is affirmed.

*Affirmed.*