[No. 7626.]

## JOHNSON ET AL V. LENNOX.

1. CONTRACTS—*Construed*—Plaintiff wrote to defendant's agent, "I offer for immediate acceptance $6700, net to me," for certain premises described    *    *    *    "you furnish abstract showing perfect title, subject to my approval." The agent endorsed upon this, "accepted," subscribing the name of his principal, with his own, as agent. *Held* that the writing constituted an express agreement, by one party to sell, and the other to purchase; that it was mutual, and upon sufficient consideration.

2. PRINCIPAL AND AGENT—*One Dealing with an Agent Must Ascertain the Scope of His Authority*—Whoever deals with an agent about the affairs of the principal, must, at his peril, inform himself of the extent of the agent's authority.

3. ——*Agent's Authority—How Ascertained as to Third Persons.* Where the agent acts under a written authority the extent of his powers must be ascertained from the writing, without reference to the secret intentions of the principal.

4. ——*Agency to Sell Lands*—One who relies upon a contract, executed by an agent, for the sale of the lands of another, has the burden of showing that the assumed agent was authorized, not merely to negotiate a sale, but to conclude, for the principal, a binding contract, of the very terms set down in the agreement relied upon.

5. ——*Authority Construed.*   C, residing in Seattle, and being financially embarrassed, wrote to D, a brother-in-law, residing in Colorado Springs, as follows: "I am up against it as far as the mortgage on that Colorado Springs property is concerned.   *   *   *   Do you suppose there would be a chance to sell the property so that I could get a little money out of it.   *   *   *   I am willing to do almost anything rather than have them foreclose.   *   *   *   See what you can do." *Held* that, neither price or terms of sale being set down, or any expressed deputation of deed, as to these or other matters, the letter gave no authority to conclude a sale.

*Error   to   El   Paso   District   Court.*—Hon. J. W. SHEAFOR, Judge.

Messrs. KINNEY, KINSLEY & SCHREIBER, for plaintiff in error.

Messrs. CHINN & STICKLER, Messrs. DUDLEY & HUFFERD, for defendant in error.

Mr. Justice Scott delivered the opinion of the court

In April, 1908, the defendant, Fred W. Chase, was the owner of certain lots and buildings in the city of Colorado Springs, El Paso County. There was at the time a mortgage on the premises in the sum of $5,000, and upon which there were certain defaulted interest payments and foreclosures was threatened. Chase was at the time residing in Seattle, Washington, and had so resided for two or three years prior. Martin Drake, who acted for Chase in the matter, was his brother-in-law, and resided at Colorado Springs. On the 29th day of November, 1907, Chase wrote Drake a letter upon which the latter assumed to act, in the matter of a negotiation for the sale of the property. This letter is as follows:

"Seattle, 11-29-09.

Martin Drake,
    Colo. City, Colo.
Dear Martin:

I am strictly up against it as far as the mortgage on that Colorado Springs property is concerned. I have got myself so tied up here on property that I haven't a dollar, and until times pick up a little it will be impossible to see a thing. Do you suppose there would be a chance to sell the property so that I could get a little money out of it; or if you are so situated that you could take care of it for me I will deed the property to you and that would give you a chance to sell it and I will divide any money with you that you can get over the mortgage and interest, or I will take it off your hands just as soon as I can dispose of some of my property here. In fact I am willing to do almost anything rather than have them foreclose. I enclose their letter and statement. See what you can do and oblige.

It has been a long time since I have heard from any of you; hope you are all well; love to all. I will write you again very soon and give you the news. This is a

business letter. Now see what you can do. Bennett has not sent me a statement for six months and I have a credit there for rent.

Yours very truly,

Fred W. Chase.''

Drake immediately set about to find a purchaser for the premises. Among others with whom he endeavored to effect a sale was the defendant, Mary Ellen M. Johnson, acting through her son and authorized agent.

On the 16th day of April, 1908, Drake closed a deal with the defendant in error, William Lennox. This was in the form of a written proposition and acceptance as follows:

''Mr. Martin Drake,

Colo. Springs, Colo.

Dear Sir:

Pursuant to our conversation of this morning, I hereby offer, for immediate acceptance, the sum of $6,700 net to me for the N. ½ of Lot No. 1, Block 201, Colorado Springs Company's Addition No. 1, situate on the corner of Yampa and Nevada Avenues, this city. The above offer is made with the understanding that you furnish abstract showing perfect title, subject to my approval.

Yours very truly,

Wm. Lennox.

Accepted.

Fred W. Chase,

By Martin Drake, Agent.''

Before closing with Lennox, Drake had some negotiation with Johnson, son and agent of defendant, and endeavored to find him before closing with Lennox, but failing to see him, and later in the day accepted the proposition of Lennox and afterward and at about one o'clock in the afternoon of the same day, Drake told Johnson that he had sold the property to Lennox. The proposition and acceptance was filed for record with the county Clerk and Recorder.

On the same day that Drake accepted the offer from Lennox, the defendant Johnson telegraphed Chase as follows:

"Colo. Springs, Colo., Apr. 16, '08.

Fred W. Chase,
    201 Pacific Block, Seattle.

I will pay you twelve hundred fifty dollars for equity and also pay interest and taxes north half lot one block two hundred one wait for letter.

Mary E. Johnson."

On April 17th, 1908, Drake telegraphed Chase:

"Fred W. Chase,
    1707, 38th Ave., Seattle, Wash.

Have sold your corner deal with no one have written.

Martin Drake."

On April 17th Chase wired Drake, "Do nothing about property, wait for letter explaining." Chase then executed a deed for the premises to the defendant Johnson and forwarded it to a bank in Colorado Springs to be delivered upon the payment of the sum offered for his equity. The deed was delivered to the defendant Johnson who entered into possession of the premises, and made valuable improvements thereon.

Prior to the delivery of the deed to Johnson, Lennox tendered to Drake the agreed purchase price of $6,700. This suit was instituted by Lennox to compel specific performance.

The trial court found in favor of Lennox and decreed a deed from Johnson to Lennox. Under supplemental pleadings and pending the litigation, the court appointed a referee to make an accounting as to the receipts and expenditures upon the part of Johnson, subsequent to her purchase. Upon this report the court made his findings and entered an order accordingly, but no error is assigned as to the correctness of this.

The contentions of the plaintiff in error are that the

judgment of the court is erroneous, because (a) the alleged contract is not a contract but an option, (b) Drake had not sufficient authority in writing from Chase to enter into a contract to sell in his behalf, (c) the alleged contract is without consideration, (d) the alleged contract lacks mutuality. The contract was signed by both parties and it is therefore mutual in that it is an express agreement to sell upon the one part and to purchase on the other. There was likewise sufficient consideration. *Hoagland v. Murray,* 53 Colo., 50, 123 Pac. 664. The sole question in this case turns upon the point as to whether or not Drake had sufficient authority to enter into the contract of sale in behalf of Chase. The letter from Chase to Drake must be considered as the sole evidence of authority from Chase to Drake. The testimony indicates that Chase intended thereby to confer such authority.

But the defendant in error had a right to rely on the instrument purporting to confer authority and can not be bound by the unexpressed intention of the parties thereto, even though both Drake and Chase may have treated this correspondence as constituting authority to Drake, to contract a sale of the premises, and though Johnson had actual knowledge of the contract between Drake and Lennox before telegraphing her proposition to purchase.

The statute in such case and the decisions of the courts relating to the form and sufficiency of authority of agents must be controlling, as against third parties. It is the rule of law that the authority of an agent conferring power to execute an executory contract for the sale of real estate must be in writing, and that the agent must be given therein specific authority to do, either the general business of his principal or the particular thing which he assumed to do. Also, that the burden is put on the plaintiff who sues upon a contract thus executed, to show that the person who signed the contract as agent,

was authorized, not only to negotiate the sale, but also to conclude in writing a binding contract within the terms, conditions and limitations expressed in the contract sued on. Such an agent must strictly pursue his authority; and any person dealing with him is bound at his peril to learn the extent of that authority. *Malone v. McCullough,* 15 Colo. 460, 24 Pac. 1040. A careful analysis of Chase's letter to Drake discloses no such specific or general authority as the law requires in such case.

The only expressions in the letter relied on which may be urged in support of the contention of defendant is error, are "Do you suppose there would be a chance to sell the property so that I could get a little money out of it?" "If you are so situated that you could take care of it for me I will deed the property to you," and in which case he would agree to divide the receipts over the mortgage or take the property off Drake's hands as soon as he can dispose of other property. "I am willing to do almost anything rather than have them foreclose;" "See what you can do," and "Now see what you can do." The letter discloses that Chase was in great financial distress and that there was strong anxiety upon his part to sell the property, but by no express language does it confer authority to Drake to execute a contract of sale, and the right to exercise such authority, cannot rest upon inference.

We think the true test in this case is whether, if Lennox had refused to purchase, Chase could have maintained an action against Lennox for specific performance. We think not, for Lennox could have urged that neither price nor terms were suggested in the letter and nothing is expressly left to the judgment of Drake as to these or other matters. The authority is to "see what you can do," not to "Do as you see fit."

It is urged by counsel that we should construe the language of the letter in view of the circumstances in

which Chase was then placed and financial conditions existing at the time, and cite *Lyon v. Pollock,* 99 U. S. 668, 25 L. Ed. 265, and *Smith v. Allen,* 86 Mo. 178 in support of this view.

In the former case the property owner had given a general power of attorney to his agent to sell his property both real and personal. The agent and the property were at San Antonio, Texas. It was during the war of the rebellion and the owner by reason of his sentiments felt obliged to remain away from that locality and thus gave his partner power of attorney to care for and dispose of all his property. This attorney transferred his own business to one Paschall, to whom he likewise transferred charge of the property to the owner Lyon, who wrote the agent Paschall "I wish you would manage as you would with your own," with the information that he, Lyon, could not go to San Antonio. He was a fugitive from the state. Lyon paid no taxes nor looked after his property in any way from 1865 to 1873. The agent Paschall continued to act as had Bennett, and with the knowledge of Lyon which the court construed to be in effect a ratification of the agent's acts.

The case of *Smith v. Allen,* 86 Mo. 178 lends color to the contention of defendant in error, but the letter in that case contained the expressions "I will leave the sale of the lots pretty much with you," and "I think I am willing to have you make out a deed and I will perfect it." But this case appears to be in conflict with the great weight of authority. In a note to the case of *Weatherhead v. Ettinger,* 78 O. St. 104, 84 N. E. 598, 17 L. R. A., (N. S.), 210, the editor has collated the authorities on the subject and which seem to overwhelmingly support the conclusion we have reached.

The case of *Winch v. Edmunds,* 34 Colo., 359, 83 Pac. 632, sustained the authority of the agent but under what appears to be a clear line of distinction from other cases

in this court, and from the authorities last cited, and wherein the court said:.

"In this respect the contract is clearly distinguishable from the contract under consideration in *Smith v. Bateman*, 8. Colo. App. 336, 46 Pac. 213, 25 Colo. 241, 53 Pac. 457, and for that reason those cases and the authorities there cited are not in point. Appellant also insists that authority to a real estate broker to sell real estate is only authority to execute a contract binding on the principal. Undoubtedly this is the rule as applied to real estate brokers. The facts in this case, however, as shown by the evidence and found by the trial court, constituted Henderson the general agent of appellant for the sale and disposal of all his real estate at Sterling. The evidence upon this point is clear and convincing.

At the trial numerous letters were introduced, written by appellant to Henderson, in which he commended him for the manner in which he was handling his business, urged him to sell and dispose of all his property at Sterling, as he did not intend to return there, and authorized him to act as he thought best. It abundantly appears from the evidence in the record that Henderson was more than a mere broker to find a purchaser—that he was a general agent authorized by appellant in writing to make the contract which is relied upon in this case."

In the case at bar the purchaser had not entered into possession of the premises and had incurred no expense, and it would seem that if he has a right of action at all it would be one in damage and not specific performance.

The judgment is reversed.

*In Division.*

Justice Gabbert and Justice Garrigues concurring.