## L. M. WEAVER V. SAMUEL SNIVELY.

### FILED JANUARY 5, 1905.     No. 13,449.

1. **Real Estate Agent:** AUTHORITY. A letter written to one who has solicited the agency for the sale of certain real estate, in which the owner states, in substance, "I still have the northwest quarter of section 20, township 22-5, and would sell for $3,000 cash net to me, or $3,200 on time, one-third down and the back payments secured by first mortgage. The man that sells it will have to get his commission out of the man that buys"—is sufficient to authorize such person to sell the land according to the terms therein stated.

2. **Specific Performance:** CROSS-PETITION: DEMURRER. An answer and cross-petition praying for the specific performance of a contract for the sale of the land in question entered into by such agent, which affirmatively shows that the owner had sold it to another *bona fide* purchaser for a valuable consideration, before the date of the contract made by said agent, and in which no claim is made for damages for a breach of such contract, does not state facts sufficient to entitle the defendant to any relief, and is therefore vulnerable to a general demurrer.

ERROR to the district court for Boone county: . JAMES N. PAUL, JUDGE. *Affirmed.*

*H. Halderson,* for plaintiff in error.

*H. C. Vail, contra.*

BARNES, J.

On November 15, 1901, H. Halderson, who lived at Newman Grove, in this state, sent to the defendant in error, who lived at McComb, Ohio, the following letter:

"NEWMAN GROVE, NEB., Nov. 15th, 1901.
"*Sam Snively, McComb, Ohio.*—DEAR SIR: Do you still own the N. W. ¼ of Sec. 20, T. 22, 5 Boone county? A party was telling me that you wished to sell this land for $3,000. If this is the least you will take would you be willing to pay me commission out of that of $75 for selling in case I should find a buyer. A good quarter about

2 miles from there sold the other day for $2,400. I should be pleased to hear from you by return mail. I am,

"Yours respectfully,          H. HALDERSON."

On the 19th of November defendant in error replied by letter as follows:

"McCOMB, OHIO, Nov. 19, 1901.

*"Mr. H. Halderson, Newman Grove, Neb.*—DEAR SIR: Your favor of the 15th at hand making inquiry about my farm in Neb., the northwest quarter, sec. 20, township 22-5. I still have and would sell for $3,000 cash, net to me or $3,200 on time one-third down and the back payments secured by first mortgage, the man that sells it will have to get his commission out of the man that buys. The quarter that you spoke of surely wasn't improved, or the man that bought got a snap, and mine won't hold at that price long as I don't have any trouble to rent to make better than 6 per cent. on investments.

"Yours truly,          SAM. SNIVELY."

On the 25th day of November, Halderson as agent, in the name of Snively as his principal, entered into a written contract to sell and convey the land practically for cash to the plaintiff in error, Weaver, for a consideration of $3,100. A few days thereafter Halderson received a postal card from Snively, as follows:

"McCOMB, 11-12, 1901.

*"Mr. H. Halderson, Newman Grove, Neb.*—DEAR SIR: The land you wrote me about is sold, and I write to let you know so you won't be to any unnecessary trouble.

"Yours, etc.,          SAM'L SNIVELY."

In reply to a letter of later date Halderson received from Snively a letter, of which the following is a copy.

"McCOMB, O., Nov. 29th, 1901.

*"Mr. Halderson, Newman Grove, Neb.*—DEAR SIR: Yours of Nov. 27th at hand today, will say I would like to sell to Mr. Weaver as it would be a few dollars to me to do so, but the sale to Mr. Graves was through a letter writ-

ten by me Sept. 2, 1901, to Mr. Mitchell, and I had given
up hearing from it till I received the letter and contract
dated Nov. 16, 1901, and I then wrote you immediately of
the sale, and he has sent me draft with cont. money, so it
is my duty to stand by it.  Sorry there was so much busi-
ness going on at once, but I can only sell the same land
once.

"Yours respectfully,          SAM'L SNIVELY."

This action was begun by the defendant in error to re-
move the Halderson contract as a cloud and incumbrance
on the title.  The plaintiff in error answered by cross peti-
tion setting forth the correspondence, including the postal
card and letter last above quoted, and praying specific
performance.  The court sustained a general demurrer to
the answer, and rendered a judgment as prayed in the
petition.  The defendant below having declined to further
plead prosecutes the proceeding for review.

Two questions are presented by the record.  One is,
whether the letter of Snively above quoted constituted
Halderson his agent with power to enter into the contract
on his behalf; and the other is, whether the answer stated
facts sufficient to require the court to decree a specific per-
formance of said contract.  As to the first question, we
are of the opinion that Halderson had the authority to
sell the land for his principal, Snively.  It seems clear
that by his first letter Snively intended to authorize Hal-
derson to sell the land for him, provided he obtained a
certain price and terms of payment therefor; but he was
to make his commission out of the purchaser.  This was
sufficient to create an agency; but it is equally clear that
Snively did not give Halderson the exclusive right to sell
the land, and so could sell it himself, or through another
agent at any time he chose to do so.  Being thus consti-
tuted the agent for the sale of the land, Halderson had the
power to enter into the contract pleaded by the defendant.
But it appears from the defendant's answer that before his
contract was made with the agent Halderson, Snively sold

the land to an innocent purchaser for value, under a contract dated November 16, 1901, which had theretofore been authorized by a letter written as early as the 2d day of September, 1901. This matter is set forth in the defendant's answer and cross-petition, without any denial of its truth or any claim that the sale to Graves was not *bona fide* and for a valuable consideration. It was thus made to appear by the defendant's answer that Snively was incapacitated from performing the Halderson contract; that it would be inequitable and unjust to decree specific performance, and that such decree if awarded would be nugatory. The general rule is that where a vendor has contracted to sell his land to one person, by selling it and conveying it to another *bona fide* purchaser for a valuable consideration, he puts it out of his power to fulfil his first contract. 4 Pomeroy, Equity Jurisprudence (3d ed.), sec. 1405, note; Pomeroy, Specific Performance of Contracts, sec. 294, and cases cited. But this is a stronger case, for it appears that the sale of the land by Snively to Graves was made November 16, 1901, and the postal card notifying Halderson of that fact was written and mailed November 22, 1901, three days before the Halderson contract was entered into. So we hold that the answer itself presented sufficient facts to authorize the court to refuse to decree specific performance. The trial court, however, found that Halderson had no authority to enter into the contract with the plaintiff in error, and for that reason sustained the demurrer. In this we think the court erred. But an examination of the answer further discloses that no facts are pleaded therein which would sustain a judgment for damages for the breach of the Halderson contract, and no relief, except for specific performance, is prayed for therein. It therefore seems clear that the demurrer was properly sustained for the reason that the answer did not state facts sufficient to entitle the defendant to any relief. The judgment of the trial court was right, and is therefore

AFFIRMED.