FRANK E. WHITEHOUSE, APPELLANT, V. JOHN GERDIS, APPELLEE.

FILED JANUARY 30, 1914. No. 17,475.

1. **Brokers: CONTRACT: CONSTRUCTION.** The use of the words "sale," "sell," or "to sell" in a contract between the owner of land and his agent is not necessarily decisive as to the authority of the agent to execute a contract of sale for and in the name of his principal. The whole writing is to be taken together, and in the light of existing circumstances and conditions the meaning is to be ascertained.

2. ———: ———: BURDEN OF PROOF. Such a contract is to be proved as other contracts are proved; the burden being upon the person who asserts the existence of the contract. When fairly construed, giving force and meaning to all expressions in the contract as far as possible, and considering all conditions and circumstances, if it shows that the owner intended to authorize the agent to make and enter into a valid contract of sale for the owner and in his name, a contract so executed by the agent will be binding upon the principal.

3. ————: ————: CONSTRUCTION. The owner of a farm advertised that he desired to sell it, and that parties interested might address him (the owner), who resided in another county, "or call on Dan Sheets," who resided near the land, "for terms and prices." He then wrote Mr. Sheets that he would sell the farm for $100 an acre, stating definitely the terms and conditions upon which he wished to sell, and added, "should you sell you get an abstract made out in Neligh if the party demands," and "if you sell the farm for me at 100 doll per acre you get 50 doll if you can get more I give you 5 cents on the dollar for what you get above one hundred per acre." *Held*, That under the existing conditions as alleged in the petition the agent was authorized to make a written contract of sale for his principal.

4. ————: ————: ACTION FOR BREACH. The agent made a written contract in the name of his principal, agreeing to convey the land to the plaintiff for the price named by the owner and upon the specified terms of payment, upon which the plaintiff paid $5,335, and demanded a completion of the contract. The contract with the plaintiff omitted some of the minor particulars specified in the contract of agency. The defendant was notified of the sale, and agreed to complete it "as soon as my wife is able to sign," and gave no other reason for delaying completion of the transaction. The plaintiff contracted to sell the land at a higher price, and the defendant refused to complete the transfer, without giving any further reason for his refusal. *Held*, That the petition alleging these facts states a cause of action requiring the defendant to plead and prove a defense, if any be had.

APPEAL from the district court for Antelope county: ANSON A. WELCH, JUDGE. *Reversed.*

*J. F. Boyd,* for appellant.

*O. A. Williams, contra.*

SEDGWICK, J.

The petition in this case alleges that the defendant, through his agent, contracted to sell to the plaintiff a tract of land in Antelope county for $16,000, one-third cash, and the balance on five years' time; that plaintiff paid the required cash, and defendant refused to complete the sale and execute and deliver the deed as agreed, and asked for damages in the sum of $1,800 and interest. The trial

court sustained a general demurrer to the petition, on the ground that it did not state facts sufficient to constitute a cause of action, and from the judgment dismissing the case the plaintiff has appealed.

It is contended that the agent had no authority to make the contract. The petition alleges that Dan S. Sheets was authorized to sell the land for the defendant; that Sheets lived near the land, and the defendant lived at Pickrell, Nebraska; and that the defendant caused to be published in a newspaper in Antelope county a notice as follows: "Farm for sale. For a short time I will offer my farm, situated one mile west of Elgin, for sale. For terms and price address me at Pickrell, Neb., or call on Dan Sheets. John Gerdis." It also alleged that this farm is situated about one mile west of Elgin in said county, and that afterwards the defendant wrote a letter to Mr. Sheets, in which he stated that he would sell his farm near Mr. Sheets "for $100 one hundred dollars per acre cash or on time to suit on time I want about 1-3 one third down balance to run 5 years or less to suit purchaser drawing 5 1-2 five and one half per cent. interest from date of sale subject to lease party that buys will get all the grain rent but I keep the fifty dollars paid for pasture  *  *  * should you sell you get an abstract made out in Neligh if the party demands  *  *  * if you sell the farm for me at 100 doll per acre you get fifty doll if you can get more I give you 5 cents on the dollar for what you get above one hundred per acre." This letter was signed by the defendant. The contention is that "mere authority to a real estate agent to sell real estate does not carry with it the implied power to make a contract for sale. And the use of the words 'to sell,' as, 'I hereby authorize you to sell same,' does not authorize the broker to make a binding contract of sale, but merely to find a purchaser." *Jones v. Howard,* 234 Ill. 404, and *Bacon v. Davis,* 9 Cal. App. 83, 88, are relied upon by the defendant.

It is alleged in the petition that Mr. Sheets entered into a written memorandum of sale with the plaintiff in the name of the defendant by Mr. Sheets as agent. This mem-

orandum recited that John Gerdis, party of the first part, "has this day sold to the party of the second part (describing the land)    *    *    *    for which the party of the second part agrees to pay the sum of sixteen thousand and no/100 dollars ($16,000) payable as follows: Cash in hand fifty-three hundred thirty-five dollars, receipt whereof is hereby acknowledged, balance ten thousand six hundred and sixty-five ($10,665) 5 years 5 1-2 per cent. annually from date.    The party of the first part is to furnish a warranty deed, a good and sufficient abstract of title, pay all taxes assessed against said land, except 1910, and will give possession by June 1st, 1910." It did not provide that the seller should "keep the $50 paid for pasture," nor reserve the grain rent after the first of June, and the use of the crib and "the right to sell and haul the corn any time this summer." In these respects it did not comply with the authority given to the agent, and no doubt, if the purchaser had insisted upon the letter of his memorandum of sale, the defendant might have refused to comply with it as not fully authorized in his contract with his agent.    The petition, however, recites that the agent wrote the defendant: "I have sold your place to Mr. F. E. Whitehouse for $100 per acre, and am inclosing herewith deed to be executed by yourself and wife. After executing the deed, kindly return it with the abstract to the Elgin State Bank, and the cash payment, $5,335, and the mortgage for $10,665, at 5 1-2 for five years, will be returned promptly. I have reserved a crib for your corn for this summer." To this the defendant answered: "I am sorry I cannot comply with your request. My wife is now so low that she is not able to sign the deed.    *    *    * if this spoils the deal I hope you will bear me no ill will or have any hard feelings against me, but there is one way we can fix it.    *    *    *    I will agree to furnish a deed as soon as my wife is able to sign or should my wife die I will give Mr. Whitehouse a deed soon thereafter on his demand he in return to give me a mortgage for balance due." He also wrote a letter to the plaintiff: "My agent Mr. Sheets sold you my farm I am sorry to say that my

wife's health has bin poor for some time and at present
is so low she is not able to sign a deed.  *  *  *  I further
agree if my wife is able to sign at any time before the 5
years are up to hand to you on demand a warranty deed
in exchange for contract and mortgage for balance due
me without any expense to you."   The contract referred
to in these letters from the defendant was one which he
forwarded for the plaintiff to sign and to accept tem-
porarily in lieu of a deed.   It does not appear what the
nature and terms of this proposed contract were.   Soon
afterwards, at the request of Mr. Sheets, a letter was writ-
ten to the defendant, in which it was said that Mr. Sheets
asked the writer to look after the transfer of the land,
and "I have seen Mr. Whitehouse today and he says that
if you can make the deed by about the middle of July
that he can get along first rate;  *  *  *  he wishes me to
ask if you think you could make a deed by about the mid-
dle of July."   The defendant replied to this letter that
his wife was still unable to sign the deed, and "I agree to
give a deed as soon as my wife is able to sign," and stated,
"If Mr. Whitehouse cannot accept a contract or bond for
deed the deal is off."   On the 7th of July the defendant
wrote to Mr. Sheets that "Seymour wrote me that, if I
could give a deed by the 15th of July, Whitehouse would
take the place but could take no contract if my wife im-
proves a little more so she can sign I have a notary public
come to my house for acknowledgment and if Whitehouse
want the farm then yet he can have it otherwise no
harm done."   A telegram was sent to the defendant at
the request of Mr. Sheets, asking if the deed had been
made out, and the defendant answered by telegram: "Yes,
deed signed and acknowledged.   A letter to follow."   Af-
terwards on the 25th of July the defendant came to Elgin
with a deed for the purpose of delivering it to the plain-
tiff, and the plaintiff offered to deliver a promissory note
secured by mortgage on the premises for the remainder of
the purchase price in accordance with the terms of the
contract, and demanded the deed, and the defendant re-
fused to deliver the deed.   It does not appear from the

petition that the defendant ever refused to execute the deed because of any variance between the contract signed by his agent and the instructions which he had given to his agent. He gave no other reason for refusing to complete the sale than that his wife was unable to sign the deed, and that the plaintiff refused to receive a contract, the terms of which are not indicated, in place of the deed. The petition further alleges that after the plaintiff had purchased the land he contracted to sell it for an advance of $1,600.

The defendant cites some of the former decisions of this court in the brief, and criticises them quite severely. He says: "The technical meaning of the expression 'to sell' was not discussed," and that many "apparent differences on the subject exist." There are no doubt many differences of expression in the cases cited, and this naturally follows from the differences of expression in the contracts that were being construed. These contracts, whereby a principal is alleged to have authorized his agent to make a sale of the principal's property for him and in his place, are to be construed like other contracts; the object being to ascertain the real intention and meaning of the parties. Such contracts are often made by correspondence, and not with the greatest possible care, and it is sometimes quite difficult to ascertain what was the real intention of the parties. The whole writing is to be taken together, and in the light of the existing circumstances and conditions the meaning is to be ascertained. The use of the words "sale," "sell," and "to sell" is not always decisive of the meaning of the whole contract. The direct and apparently unequivocal expression, "you are hereby authorized to sell my property," has, been held, in the light of the other provisions of the writing, to amount to no more than to authorize the agent to find a purchaser and assist the owner in selling his property. *Armstrong v. Lowe,* 76 Cal. 616.

In *Bacon v. Davis,* 9 Cal. App. 83, there is an extensive and quite exhaustive discussion of the matter. It was held that the agent was authorized by a written contract to make a sale of the property in the name of his principal. The court state many of the common and accepted

general rules for the construction of contracts, and in regard to the case being discussed say: "It is not a question of express or implied authority. The fair import of the terms used, measured according to the established rules of interpretation, must clearly reveal the intention of the owner specifically to empower the agent to enter into a contract of sale of the property, in the ordinary acceptation of that term, or else the case of the defendant must fail. Of course, no one could reasonably contend that any particular formula of words is required to convey such authority, that the owner must say, for instance, *in hæc verba,* 'I authorize you as my agent to enter into an executory contract of sale,' but the language used must reach the same measure of potency when tried by the recognized standards, and must positively authorize that very act." This statement is perhaps correct, but it seems to us to have a little unnecessary vigor and emphasis. If the words "clearly," "specifically," and "positively" were omitted, there would perhaps be less danger of misunderstanding the real meaning of the statement. It is needless to say more than that such a contract must be proved as any other contract is proved, the burden being on the person who asserts the existence of the contract, and that, when fairly construed, giving force to all expressions in the writing so far as-is possible, and considering all conditions and circumstances existing, it must show that the owner intended to authorize the agent to make and enter into a valid contract of sale of the land for the owner in his name. When the contract, so construed, has that meaning, the act of the agent in selling and contracting to convey the land is authorized. Each case must be determined upon its own facts, and decisions which construe a different state of facts are not of much assistance.

In this case the owner of the land first published the notice informing the public that his land was for sale, and advised those who desired to purchase to negotiate with himself or with Mr. Sheets. Afterwards he wrote Mr. Sheets telling him that he desired to sell the land, and stated with precision his price and terms, giving all of

the details necessary to be inserted in the contract of sale. Pursuant to this authority the agent contracted to sell the land, and the defendant, being notified of the fact that the land was contracted, made no objection to the terms of the contract, evidently considering that the details, if any had been inadvertently omitted, could be readily supplied, and promised definitely to execute a deed pursuant to the contract which his agent had made. He delayed the execution of the deed because, as he asserted, of the illness of his wife, and not for any other reasons. The deed was afterwards executed by the defendant and his wife, and the defendant, when he went to Antelope county with the deed for the purpose apparently of completing the contract, refused to do so for some reason which is not disclosed. If a sufficient reason existed to justify his refusal, he should make it appear by proper pleadings and proof. We think the petition on its face states a cause of action, and that the court erred in sustaining the demurrer thereto.

The judgment of the district court is reversed and the cause remanded.

REVERSED.

LETTON, FAWCETT and HAMER, JJ., not sitting.