JOSEPH H. MILES, APPELLEE, v. JOHN LAMPE, APPELLANT.

FILED JUNE 26, 1918.  No. 20119.

1. **Brokers: CONTRACT: INTENTION OF PARTIES.** Whether a broker is authorized by his contract to execute a binding contract of sale of land in the name of his principal depends upon the intention of the parties to the contract, which must be determined from a consideration of the whole contract in the light of the circumstances surrounding the making thereof.

2. **——: ——: CONSTRUCTION.** When the language of such contract of brokerage is ambiguous and doubtful upon its face, the construction that the parties themselves have put upon the contract is very controlling in determining the true intention of the parties.

3. **Specific Performance: SALE BY BROKER.** If the broker, instead of assuming that he has power to execute such contract, refers it to his principal, and when he finds, after more than two days' effort, that he cannot induce his principal to agree to such contract of sale, allows the proposed vendee to sign the contract and himself signs it in the name of his principal, and the vendee immediately begins action thereon to enforce specific performance, all parties knowing that the owner did not desire to have his land so disposed of, and that the brokerage contract reserves to the owner the right to take the land from the market upon two days' notice, a court of equity will not enforce specific performance.

APPEAL from the district court for Nemaha county: JOHN B. RAPER, JUDGE. *Reversed, with directions.*

*Lambert & Armstrong, E. B. Quackenbush* and *Berge & McCarty,* for appellant.

*John J. Sullivan* and *Kelligar & Ferneau, contra.*

SEDGWICK, J.

The defendant, Lampe, who was the owner of 640 acres of land in Butler county, Kansas, gave to one Shubert, a real estate broker, a contract in writing by virtue of which the broker afterwards executed a contract in Lampe's name agreeing to convey the land to the plaintiff. Lampe refused to convey the land, and the plaintiff brought this action to compel a specific performance of his contract. The trial court entered a decree in favor of the plaintiff, and the defendant, Lampe, has appealed.

The defendant's contract with the broker was entitled, "Contract for sale of real estate, made with——," and recited: "I, or we, hereby list the below described property with A. G. Shubert for sale and authorize them to keep the same on their list until sold or given two days' notice that the same is hereby withdrawn from the market. * * * I hereby give them the exclusive right to sell the same. And if they sell or furnish me a buyer, or in any way cause the same to be sold, I agree to pay them a commission of 2 per cent. or $——. * * * And if within 30 days after the withdrawal of said property from the market I should sell to a customer of A. G. Shubert I owe and agree to pay them the above commission the same as if they had made said sale." Then follows a description of the land and of the improvements and its location, and it continues: "Lowest cash price $25 per acre, or $500 amount down to bind the bargain $1,000. $——on March 1st. Balance to run——years at ———— per cent., with the privilege of paying $——."

In pursuance of this writing the plaintiff alleges that Shubert agreed to sell the land to him for $25 an acre, and took the plaintiff's check payable to himself for $500

as payment thereon. Several days later Shubert reported to the defendant that he had made such agreement, and presented to defendant a written contract purporting to be executed by the defendant to the plaintiff in accordance with the terms of the alleged agreement. This contract had been signed by the plaintiff, and the defendant was requested to sign it. This he did not do. The evidence is somewhat conflicting as to the reasons he gave for not doing it. He testified that he had investigated and found that the land was worth more money, and refused to sign it under the provision in the broker's contract that upon two days' notice he might withdraw the land from the market. After some days of futile effort to persuade the defendant to sign the contract, and something over 30 days after the alleged oral contract by the agent with the plaintiff, the agent signed the defendant's name to the contract with the plaintiff, and the plaintiff immediately began this action to compel a specific performance of that contract.

The first question presented is whether the broker's contract authorized him to execute a contract of sale in the name of his principal that a court of equity would specifically enforce. It has been decided in this state, and by other courts, that the use of the word "sale" or "to sell" in a broker's contract is not necessarily conclusive that the broker may execute a binding contract of sale in the name of his principal, but, like other contracts, the real intention of the parties in that particular is to be determined from a consideration of the whole contract in the light of the circumstances surrounding the making thereof. *Whitehouse v. Gerdis*, 95 Neb. 228.

The broker's contract in question is in some respects peculiar. It contains matters that might indicate that the broker was authorized to bind his principal in a written contract of sale, and also contains matters that indicate the reverse. In addition to the use of the word "sale" and the exclusive right to sell the same, it contains the clause: "If they sell or furnish me a buyer, or in

any way cause the same to be sold, I agree to pay them a commission of 2 per cent. or $————.'' This last clause might perhaps indicate that what is said in the contract in regard to selling the land is for the purpose of definitely fixing the right to commission upon the sale. On the other hand, the contract, while it names a definite price for which the land may be sold, in the same clause continues, ''or $500 amount down to bind the bargain $1,000.'' This seems to have been construed, and perhaps properly, to mean that $500 could be paid by the purchaser as earnest money, and that the $1,000 was to be considered as part payment upon the execution and delivery of the deed and proper securities for the remainder. The written contract which the broker made with the plaintiff for the sale of the land provided that the price should be $16,000, ''the sum of $500 cash in hand paid, the receipt of which is hereby acknowledged. The sum of $1,000 due and payable on March 1st, 1916, without interest, the balance over and above incumbrances to be paid on delivery of warranty deed and abstract showing good title.'' That ''the party of the first part (the defendant Lampe) to retain possession of said premises until the payment day of balance of purchase price, when the same shall be delivered up to said party of the second part, upon his compliance with the agreements hereinbefore contained. * * * The said parties for the true and faithful performance of all the covenants and agreements herein named do hereby bind themselves, each to the other, in the penalty sum of $500, as liquidated damages to be paid by the second party. First party to furnish a complete abstract, showing a good title to the premises, and, when deed is delivered as herein provided, to properly transfer insurance now upon the buildings on said premises.'' None of which matters are specified or authorized in the brokerage contract, and it is at least unusual that the landowner should leave such important matters entirely to the judgment and discretion of the broker. So that it may fairly be said that the intention

of the parties to the broker's contract in that regard would upon the face of the contract be doubtful. And, if the broker had executed the contract at the time that he says it was agreed upon, relying upon his authority to so bind his principal, it might be difficult to determine the question of his authority so to do. When the language of a contract is ambiguous and doubtful upon its face, the construction that the parties themselves have put upon the contract is very controlling in determining the true intention of the parties. This broker, instead of assuming that he had power to execute such a contract, referred it to his principal, and when he and the plaintiff found that they could not persuade the defendant to sign the contract after waiting and negotiating for more than a month, the broker, without the consent and against the protest of the defendant, after having offered to assign the $500 check to the defendant, himself signed the defendant's name to the contract and delivered it to the plaintiff, who immediately began this action. Under these circumstances we think it should be held that the intention of the parties to this broker's contract was that the broker should find a purchaser, and, before making the contract of sale, should refer the matter to his principal. If the defendant then, without excuse, was unreasonable in refusing to execute the contract, he might still be liable to the broker for his commissions, but a court of equity would not enforce the contract in favor of the grantee therein.

It appears that the defendant, more than two days before the alleged contract of sale was delivered, refused to sell the land upon the proposed terms. This he had a plain right to do under the provision of the contract, which was that the broker should not keep the land on his list for sale after the owner had given two days' notice that he withdrew it from the market. The plaintiff's answer to this is that the contract of sale was made orally before the owner of the land had given any notice that he withdrew the land from the market, and that the

execution and delivery of the written contract is only relied upon as the proper legal evidence of what the oral contract really was, and, while the contract could not be proved by parol, it may be proved by a subsequent writing which specified the terms of the oral contract. The plaintiff relies upon *Pierce v. Domon,* 98 Neb. 120, in which it was held that under section 2628, Rev. St. 1913, a broker could collect his commissions which he had earned under an oral agreement to pay the same, if that agreement was afterwards reduced to writing and signed by the party to be charged with the commissions. That section provides that every such contract of brokerage shall be void unless in writing. The word "void" is so often used for "voidable" that the case cited so construes it. In *Riley v. Bancroft's Estate,* 51 Neb. 864, the same construction was given to the word "void" in section 2631, Rev. St. 1913. In the opinion Judge Irvine fully discusses the reason of the rule, and states that reason in the second paragraph of the syllabus: "The object of the statute of frauds is to prevent frauds and perjuries, and, while certain contracts are by the terms of the statute declared void, the uniform construction placed upon the statute by the courts renders such contracts not void, but merely unenforceable for want of the evidence which the statute requires." Section 2623, Rev. St. 1913, provides: "No estate or interest in land, other than leases for a term of one year from the making thereof, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered, or declared, unless by operation of law, or by deed of conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same." These words are very positive and explicit. In addition to the prevention of frauds and perjuries, this section requires the title and interest in land shall be created, granted, assigned, surrendered, or declared only "by deed of conveyance in writing." And it may well be doubted whether the

ownership of land, either legal or equitable, relates to the time of some oral agreement to sell, rather than to the deed of conveyance in writing, or can be transferred by parol even if such attempted parol transfer is afterwards acknowledged in writing.

It does not appear that the defendant attempted to avoid payment of commissions to the broker, or that he intentionally violated the reasonable construction of his contract with the broker. The attempt of the plaintiff and the broker to compel the defendant to dispose of the land against his will after they had referred the matter fairly to the defendant's decision, and found that he did not desire to have his lands disposed of in that way, does not commend itself to the conscience of a court of equity.

The trial court should have entered judgment in favor of the defendant, and the judgment entered is reversed and the cause remanded for that purpose.

REVERSED.