EDWIN D. GOULD, APPELLEE, V. DANIEL G. ROCKWELL ET AL.,
APPELLANTS.

FILED FEBRUARY 23, 1921. No. 21309.

1. **Brokers: CONTRACT: CONSTRUCTION.** When an owner of land enters
into a written contract, whereby he lists his land with a broker
"for sale," though the description of the land and the terms of
sale are set out therein, the broker's authority to enter into a
contract of sale for his principal will not be inferred from the
words "for sale," used in the contract, and, in order that such
authority exists, it must affirmatively and unequivocally appear
from the writing, or, at least, must be so indicated from other
terms used, that the contract, in the light of surrounding cir-
cumstances or the construction placed upon it by the parties, or
other proper evidence to explain ambiguity, will clearly show
that such authority was intended.

2. **Case Disapproved.** Paragraph 1 of *Weaver v. Snively*, 73 Neb.
35, disapproved to the extent that it differs from the rule as
stated herein.

APPEAL from the district court for Custer county: BRUNO
O. HOSTETLER, JUDGE. *Reversed and dismissed.*

*Sullivan, Squires & Johnson,* for appellants.

*Pratt & Hamer, contra.*

FLANSBURG, J..

Action for specific performance, based upon a contract
purporting to bind the defendant Rockwell to a sale of farm
land to the plaintiff. The defense was that the contract
was made by the defendant's real estate agent, who was
employed only to find a purchaser, but who had no written
authority to bind the defendant by a contract of the sale
of his land. The court found in favor of the plaintiff, de-
creed specific performance of the contract, and the defend-
ant appeals.

The record shows that the defendant listed his land
with Houghton & Perkins, real estate agents, and signed
the following agreement:

"LAND LIST.

"Owner D. G. Rockwell, Address-Hysham, Mont. Acres-320. Sec. 31, Twp. ......, Range ....... Custer county, State-Nebr. Under cultivation-240 acres; grass land-80 acres; orchard .... acres: land .... acres. House-size ...... Barn-size ...... Granary-size ........ Shed-size ....... ....... fenced. No, wells ....... Distance to town-8 miles. Shipping point .... miles. Post office-8. School-1½ miles. Church .... miles. $56.50 per acre; when due ....; rate of interest ......; lowest price and terms of sale-$1,000 to cinch bargain. $4,000. Mar. 1st. Bal. 5 yr. at 6%.

"This is to certify that I have listed the above described land with Houghton & Perkins for sale or trade for a period of ...... months, and I agree to pay $465 commission out of first money received on sale. Good till Feb. 1st. Dated 8-22-1918.

"(Signed) D. G. Rockwell, Hysham, Mont."

The question is whether or not this agreement was a mere listing agreement, whereby Houghton & Perkins were to procure a purchaser and receive compensation for that service, or whether the writing was sufficient authority to them to bind the defendant to a contract for the sale of the land without any further written authority from him. The contract recites that the land is listed for sale or trade. If the agents were authorized to bind the defendant to a sale of the land without further consulting him, they were also, under the contract, authorized to trade his land. It is most unreasonable that any owner of land would enter into such an agreement.

It is generally conceded that the only duty of a real estate broker is to find a purchaser who is ready, willing and able to enter into a contract according to the terms that have been fixed by his principal, and that such a broker does not have authority to proceed further and to enter into the contract as agent for the principal or in the principal's stead, but that the contract, listing the property with him, in order to authorize him to enter into a

contract for the sale of the land, must by its terms indicate unequivocally that the owner of the land intended that the broker should have that authority. Such authority will never be inferred nor presumed, and the burden is upon the party seeking the benefit of the contract of sale of the land to prove that the written authority of the agent did affirmatively authorize the agent to make the contract. *Whitehouse v. Gerdis,* 95 Neb. 228; *Miles v. Lampe,* 102 Neb. 619; *Ross v. Craven,* 84 Neb. 520; *O'Shea v. Rice,* 49 Neb. 893.

When an owner lists his property with a real estate broker for sale, it is generally understood that the broker's duties are merely to find a purchaser. No good reason exists why the owner should be required, when he uses the ordinary expressions employed in such contracts, to hedge it about with conditions limiting the authority of such a broker and preventing him from entering into a contract of sale without further consultation with the owner; but there is good reason why the broker should see that his authority to enter into a contract should affirmatively appear, if he desires his authority to extend beyond what is, as an almost universal rule, given to such brokers in the relation between a real estate agent and his principal. No wider authority than the mere privilege and duty of finding a purchaser is to be inferred from the use of the words, that the broker is employed "to sell" or "to make a sale," when such expressions are not supplemented by express terms in the contract indicating that the broker shall be allowed to bind his principal by a contract entered into by the broker as the agent of his principal. Such is the overwhelming weight of authority. Notes, 17 L. R. A. n. s. 210; 23 L. R. A. n. s. 982,

In the case of *Whitehouse v. Gerdis, supra,* the court stated that the writing "must show that the owner intended to authorize the agent to make and enter into a valid contract of sale of the land for the owner in his name," but also said that perhaps it was stating the rule too emphatically to say that such authority must "clearly, speci-

fically, and positively" appear. As said in *Bacon v. Davis,*
9 Cal. App. 83 : "No one could reasonably contend that any
particular formula of words is required to convey such au-
thority, that the owner must say, for instance, *in hæc verba,*
'I authorize you as my agent to enter into an executory
contract of sale,' " still, in order that the contract show
the authority at all, it must show it affirmatively and posi-
tively, even though no specific reference need be made in
the exact language as mentioned in the California case.

Where the contract is not clear as to such authority, but
is ambiguous and capable of construction, then, of course,
extrinsic matters and the circumstances surrounding the
making of the contract may be resorted to as an aid to
determine the intention of the parties. In such event, the
construction placed by the parties upon the contract is
of most persuasive force in ascertaining what the contract
really means. In the case before us, however, the contract
is not open to construction. There are no terms in the
contract indicating in any way that it was intended the
agent should be authorized to enter into a contract of sale
for his principal.

It may be further said that the construction placed
upon this contract by the defendant and by Houghton &
Perkins clearly shows that they did not interpret their
agreement as authorizing Houghton & Perkins to make a
contract as agents of the defendant for the sale of the land,
but, on the other hand, the record shows that, when they
found a purchaser, a contract was drawn up by them and
forwarded to the defendant for signature. This he refused
to sign, but drew up a contract and sent it back to them.
This the purchaser refused to sign, and thereupon, without
further authority, Houghton & Perkins entered into the
contract in question. By the action of the parties in
exchanging what they proposed as the contract to be en-
tered into by the defendant, it is clearly shown that they
considered it necessary that the defendant execute a con-
tract for the sale of the land, and that Houghton & Perkins
were not authorized to do that for him.

The plaintiff lays particular stress upon the case of *Weaver v. Snively*, 73 Neb. 35, relying upon the statement of the court in the first paragraph of the syllabus.  The rule, as there set out, is based upon a statement by the court in the case which was unnecessary to the decision, and was, therefore, mere dictum.  It, furthermore, appears to be inconsistent with the former opinions of this court, above referred to, and, to the extent that it differs from the rule as stated herein, it is disapproved.

The plaintiff also relies upon a statement by the court in the case of *Spanogle v. Maple Grove Land & Live Stock Co.*, 104 Neb. 342.  It will be noticed, however, both that the contract involved in that case differs from the one now under consideration, and that the statement of the court, that the contract there might have been authority to make a contract of sale, was only a dictum and unnecessary to the decision, and, therefore, not controlling here.

For the reasons given, the judgment of the lower court is reversed and the case dismissed.

REVERSED AND DISMISSED.