### LANDSKROENER v. HENNING.

1. BROKERS—PRINCIPAL AND' AGENT—SALE OF LAND—AUTHORITY
OF AGENT TO BIND PRINCIPAL.

The words, "and said W. & S. are authorized to sell said
property," used in a brokerage contract signed by the
owner, did not give to the brokers power to bind the
owner, nor did the use of the words, "I agree to furnish
abstract, tax history and merchantable title," evidence such
intent, but said contract is construed to be a listing con-
tract only.

2. FRAUDS, STATUTE OF — ESTOPPEL — ORAL RATIFICATION OF UN-
AUTHORIZED SALE OF LAND—SPECIFIC PERFORMANCE—VENDOR AND
PURCHASER.

In a suit by the vendees for the specific performance of
a land contract, executed by the brokers, with whom the
property was listed, without authority from the owner,
the owner was not estopped from invoking the statute
of frauds· by the fact that after the contract was executed
she expressed her pleasure to the plaintiffs that they
were to buy the property and that she told them she
would have sold it for less if they had come direct to
her and that, in reliance thereon, they incurred expense
in arranging for a loan, since they are in no better or
different position than they would be had they made an
oral agreement to purchase and in reliance thereon had
incurred the expense noted.

3.· EQUITY—JURISDICTION—ADEQUATE REMEDY AT LAW.

Where the owner and brokers were made defendants in ⸶
a suit for the specific performance of a land contract
executed by the brokers without authority from the owner
who repudiated it, and the brokers filed a cross-bill against
the owner for their commission which they claimed to
have earned by finding a buyer ready, willing and able
to buy, the trial court, on finding the contract of sale void,
properly dismissed the cross-bill on the ground that their
remedy was an action at law.

Appeal from Saginaw; Snow (Ernest A.), J. Sub-

On written authorization of brokers or agent to buy or sell
land as a memorandum of contract of sale sufficient to satisfy
the statute, of frauds, see note L. R. A. 1915C, 400.

On power of real estate broker to make contract of sale, see
notes 17 L. R. A. (N. S.) 210; 23 L. R. A. (N. S.) 982.

mitted October 10, 1922.   (Docket No. 71.)   Decided February 5, 1923.

Bill by William C. Landskroener and another against Gustina Henning and Albert C. Welzeihn and Christian J. Schulz, copartners as Welzeihn & Schulz, for the specific performance of a land contract.   Defendants Welzeihn and Schulz filed a cross-bill asking for a decree for commissions earned on said sale. From a decree dismissing the bill and cross-bill plaintiffs and cross-plaintiffs appeal.   Affirmed.

*O'Keefe & O'Keefe,* for plaintiffs.

*Robert J. Curry* (*Cook & Cook,* of counsel), for defendant Henning.

*Frank A. Rockwith,* for defendants Welzeihn and Schulz.

FELLOWS, J.   This bill is filed for specific performance based on two writings known in the record as Exhibits A and B.   Exhibit A is as follows:

"Name of owner—Mrs. Chris Henning.
   "Address—1452 Genesee avenue.
   "Description of property:
Brick Building, 26x72 ft.
8 rooms upstairs, copper bath tub.
Lot Gen. 150 ft. Holland 235, including blacksmith
   shop.
Rent ......................$10
Store ......................$50
                          ————
                          $60
$5,800 net to owner.
15 up.
35 down.   Ass. $4500.
Sale price $..................
Terms of sale—$2,000 down.
   "Welzeihn & Schulz, of Saginaw, Michigan, in consideration of their listing said property and endeavor-

ing to find a purchaser therefor, are granted the exclusive right to sell the same until 1st July, 1919, and said Welzeihn & Schulz are authorized to sell said property at the price, or prices, above named.      In case of sale at the above named price and terms or at such other price and terms as may be agreed upon, said Welzeihn & Schulz shall retain or receive any amount exceeding five thousand eight hundred dollars. I agree to furnish abstract, tax history and merchantable title.

"Dated Saginaw, Mich., April 30, 1919,

"Signature: Mrs. CHR. HENNING (Seal).

"In presence of:

_____"

Exhibit B is as follows:

"Saginaw, Michigan, May 12th, 1919.

"Received of William C. Landskroener $100, being earnest money on the purchase of store building and land located on the southwest corner of Holland and Genesee avenues, better described as follows:      A parcel of land in the S. E. ¼ of section 30, town 12 north, range 5 east, described as follows: Commencing on the S. W. corner of Genesee and Holland avenues, running thence west along the south line of said Holland avenue, 235.33 feet, thence south at right angles to said Holland avenue 135 feet, thence east on a line parallel with Holland avenue 301.12 feet to the west line of Genesee avenue, thence northerly along the west line of Genesee avenue 150.16 feet to the place of beginning.      Owned by Mrs. Christ Henning.      Sale price to be $6,500 payable as follows: $2,200 upon execution and delivery of a land contract, balance in payments of $300 a year, this amount to include the interest at 6 per cent. per annum.

"Welzeihn & Schulz guarantee to raise $2,000 on my property located at 609 Emily street, to be applied on the purchase price of this property.

"Mrs. Henning agrees to furnish abstract and tax history showing good merchantable title to said property.

(Signed)      "WELZEIHN & SCHULZ, Agts."

It is the claim of the plaintiffs on the facts that defendant Mrs. Henning called Mr. Schulz of the real estate firm of Welzeihn & Schulz to her home to arrange for the sale of the property in question. That after some negotiations she agreed to sell at $5,800 giving as commission all sums received over that amount, and that Exhibit A upon one of the firm's forms was then signed by her; that the firm afterwards negotiated a sale to plaintiff William C. Landskroener at $6,500 and he agreed to buy at that figure, made the down payment of $100 and received Exhibit B, and that plaintiff Minnie Landskroener, wife of William C., acquired an interest by assignment. It is their claim on the law that Exhibit A made Welzeihn & Schulz the agents of defendant Mrs. Henning with power to execute a binding contract in her behalf for the sale of the premises, and that Exhibit B was such binding contract which they are entitled to specifically enforce, they having tendered performance on their part. It is their further claim that they are entitled to invoke the doctrine of estoppel upon certain facts which we shall presently detail.

It is the claim of defendant Mrs. Henning on the facts that she did not with knowledge of its contents execute Exhibit A; that she agreed to sell the premises for $8,800 net to her and that the figures were either read incorrectly to her or have been changed since she signed the paper. It is her claim on the law that Exhibit A did not give Welzeihn & Schulz power to bind her by an executory land contract and that she is not estopped under the facts to so claim.

Welzeihn & Schulz are made defendants and file an answer in the nature of a cross-bill. Their claim as to the facts and law are in substantial accord with those of plaintiffs. They further insist that they have performed their brokerage agreement and have produced a purchaser ready, willing and able to take the

property on plaintiffs' terms, that they have earned their commission and are entitled to decree for it irrespective of plaintiffs' right to maintain their action.

The trial judge found the facts to be as contended by defendant Mrs. Henning and dismissed their bill. As to the cross-bill of defendants Welzeihn & Schulz, he held that their remedy was in an action at law and dismissed their cross-bill without prejudice. Plaintiffs and Welzeihn & Schulz appeal.

We are constrained to reach a different conclusion on the facts than did the trial judge. We are not persuaded that defendant Mrs. Henning has successfully impeached the written instrument admittedly signed by her. On the contrary we are persuaded that plaintiffs have established the facts claimed by them by a preponderance of the evidence. This necessitates the consideration of the interesting questions which counsel have submitted for our consideration. First and most important is whether Exhibit A should be construed as a listing agreement alone or does it carry with it the power to execute a binding contract of sale of the premises in question? The courts of many jurisdictions have had before them for consideration many contracts of varying phraseology involving the power of real estate brokers to sign binding contracts. Counsel in the instant case have been most diligent and have brought to our attention numerous decisions. As these cases deal with such a variety of expressions found in the different contracts, we feel it may be helpful to the profession to here list them.

Plaintiffs' counsel call our attention to the following cases: *Stuart* v. *Mattern*, 141 Mich. 686; *Seberger* v. *Wood,* 106 Neb. 272 (183 N. W. 363) ; *Haydock* v. *Stow,* 40 N. Y. 363; *Peterson* v. *O'Connor,* 106 Minn. 470 (119 N. W. 243, 130 Am. St. Rep. 618) ; *Jackson* v. *Badger,* 35 Minn. 52 (26 N. W. 908) ; *Lyon* v. *Pollock,*

99 U. S. 668; *Littlefield* v. *Dawson*, 47 Wash. 644 (92 Pac. 428) ; *Johnson* v. *Dodge*, 17 Ill. 433; *Vanada* v. *Hopkins*, 24 Ky. 285 (19 Am. Dec. 92) ; *Hemstreet* v. *Burdick*, 90 Ill. 444; *Hedrick* v. *Donovan*, 248 Ill. 479 (94 N. E. 144) ; *Peabody* v. *Hoard*, 46 Ill. 242; *Minor* v. *Willoughby*, 3 Minn. 225; *Brady* v. *Fontenot*, 132 La. 826 (61 South. 838) ; *Rutenberg* v. *Main*, 47 Cal. 213; *Smith* v. *Allen*, 86 Mo. 178; *Golden* v. *Claudel*, 85 Kan. 465 (118 Pac. 77) ; *Jasper* v. *Wilson*, 14 N. M. 482 (94 Pac. 951, 23 L. R. A. [N. S.] 982) ; *Combes* v. *Adams*, 150 N. C. 64 (63 S. E. 186) ; *Rosenbaum* v. *Belson* (1900), 2 Ch. Div. 267; *Matherson* v. *Davis*, 2 Coldw. (Tenn.) 443; *Inhabitants of Nobleboro* v. *Clark*, 68 Me. 87 (28 Am. Rep. 22) ; *Valentine* v. *Piper*, 22 Pick. (Mass.) 85 (33 Am. Dec. 715) ; *Farnham* v. *Thompson*, 34 Minn. 330 (26 N. W. 9, 57 Am. Rep. 59) ; *Hunter* v. *Eastham*, (Tex. Civ. App.), 67 S. W. 1080; *Bacon* v. *Davis*, 9 Cal. App. 83 (98 Pac. 71) ; *Brown* v. *Griswold*, 109 Wis. 275 (85 N. W. 363) ; *Vermont Marble Co.* v. *Mead*, 85 Vt. 20 (80 Atl. 852) ; *Lee* v. *Lloyd*, 181 N. Y. Supp. 295; *Canada* v. *Casey*, 35 N. Y. Supp. 1054; *Stirn* v. *Hoffman House Co.*, 28 N. Y. Supp. 724.

Counsel for Mrs. Henning call our attention to the following cases: *Coleman* v. *Garrigues*, 18 Barb. (N. Y.) 60; *Gorsuch* v. *Berman*, 270 Pa. 8 (112 Atl. 750) ; *Yadwin* v. *Arnold*, 94 N. J. Law, 500 (110 Atl. 903) ; *Morris* v. *Ruddy*, 20 N. J. Eq. 236; *Marsh* v. *Buchan*, 46 N. J. Eq. 595 (22 Atl. 128) ; *Lindley* v. *Keim*, 54 N. J. Eq. 418 (34 Atl. 1073) ; *Stengel* v. *Sergeant*, 74 N. J. Eq. 20 (68 Atl. 1106) ; *Carr* v. *Mazon Estate*, 26 N. M. 308, 343 (191 Pac. 137) ; *Craig* v. *Parsons*, 22 N. M. 293 (161 Pac. 1117) ; *Jasper* v. *Wilson*, *supra; Stark* v. *Rogers*, 69 Colo. 98 (169 Pac. 146) ; *Buckingham* v. *Harris*, 10 Colo. 455 (15 Pac. 817) ; *Johnson* v. *Lennox*, 55 Colo. 125 (133 Pac. 744) ; *Springer* v. *City Bank*, 59 Colo. 376 (149 Pac. 253,

Ann. Cas. 1917A, 520) ; *Brown* v. *Hogan,* 138 Md. 257
(113 Atl. 756) ; *Slater* v. *Rauer,* 43 Cal. App. 748 (185
Pac. 864) ; *Duffy* v. *Hobson,* 40 Cal. 240 (6 Am. Rep.
617) ; *Armstrong* v. *Lowe,* 76 Cal. 616 (18 Pac. 758) ;
*Church* v. *Collins,* 18 Cal. App. 745 (124 Pac. 552) ;
*Salter* v. *Ives,* 171 Cal. 790 (155 Pac. 84) ; *Thompson*
v. *Scholl,* 32 Cal. App. 4 (161 Pac. 1006) ; *McDermott*
v. *Drumm,* 96 Conn. 670 (115 Atl. 476) ; *McCullough*
v. *Hitchcock,* 71 Conn. 401 (42 Atl. 81) ; *Donnan* v.
*Adams,* 30 Tex. Civ. App. 615 (71 S. W. 580) ; *Gould*
v. *Rockwell,* 105 Neb. 724 (181 N. W. 655) ; *Lichty*
v. *Daggett,* 23 S. D. 380 (121 N. W. 862) ; *Halsey*
v. *Monteiro,* 92 Va. 581 (24 S. E. 258) ; *Glenworth*
v. *Luther,* 21 Barb. (N. Y.) 145; *Grant* v. *Ede,* 85
Cal. 418 (24 Pac. 890, 20 Am. St. Rep. 237) ; *Shepherd*
v. *Hedden,* 29 N. J. Law, 334; *Young* v. *Hughes,* 32
N. J. Eq. 372; *Siebold* v. *Davis,* 67 Iowa, 560 (25 N.
W. 778) ; *Stewart* v. *Pickering,* 73 Iowa, 652 (35 N.
W. 690) ; *Ballou* v. *Bergvendsen,* 9 N. D. 285 (83 N.
W. 10) ; *Brandrup* v. *Britten,* 11 N. D. 376 (92 N.
W. 453) ; *Weatherhead* v. *Ettinger,* 78 Ohio St. 104
(84 N. E. 598, 17 L. R. A. [N. S.] 210) ; *Robert-
son* v. *Allen,* 107 C. C. A. 254, 184 Fed. 372; *Dodd*
v. *Groos,* 175 Iowa, 47 (156 N. W. 845) ; *Crumpacker*
v. *Jeffery,* 63 Ind. App. 621 (115 N. E. 62) ; *Tyrrell*
v. *O'Connor,* 56 N. J. Eq. 448 (41 Atl. 674) ; *York*
v. *Nash,* 42 Or. 321 (71 Pac. 59) ; *Watkins Land Mort-
gage Co.* v. *Campbell,* 100 Tex. 542 (101 S. W. 1078) ;
*Jones* v. *Howard,* 234 Ill. 404 (84 N. E. 1041) ; *Thorne*
v. *Jung,* 253 Ill. 584 (97 N. E. 1073) ; *Furst* v. *Tweed,*
93 Iowa, 300   (61 N. W. 857) ; *Simmons* v. *Kramer,*
88 Va. 411 (13 S. E. 902) ; *Stone* v. *Indemnity Co.,*
217 N. Y. 656 (112 N. E. 1077) ; *Larson* v. *O'Hara,*
98 Minn. 71 (107 N. W. 821, 8 Ann. Cas. 849, 116
Am. St. Rep. 342) ; *Ryon* v. *McGee,* 2 Mack. (D. C.)
17; *Carstens* v. *McReavy,* 1 Wash. 359 (25 Pac. 471) ;
*Barnes* v. *Savings & Loan Society,* 21 Wash. 448 (58

Pac. 569) ; *Armstrong* v. *Oakley,* 23 Wash. 122 (62 Pac. 499) ; *Campbell* v. *Galloway,* 148 Ind. 440 (47 N. E. 818) ; *Shillinglaw* v. *Sims,* 86 S. C. 76 (67 S. E. 906) ; *Balkema* v. *Searle,* 116 Iowa, 374 (89 N. W. 1087) ; *Boyle* v. *Grassick,* 2 W. L. R. (Canada) 284; *Dickinson* v. *Updike* (N. J. Law), 49 Atl. 712; *Whitehouse* v. *Gerdis,* 95 Neb. 228 (145 N. W. 338).

These cases have all been examined but obviously a resumé of them cannot be undertaken.    Numerous cases cited by plaintiffs' counsel hold that the authority "to sell" in a brokerage contract carries with it the authority to do such acts as are necessary to carry out such power, including the authority to make on behalf of the principal a binding contract of sale. Others do not go so far and are in substantial accord with the doctrine announced in *Rutenberg* v. *Main, supra,* where it was said:

"It is said Meinecke had power to find a purchaser satisfactory to the plaintiff, but none to make or sign the memorandum.    It is true that the power of a mere broker is thus limited, although he be employed 'to sell' real estate, because these words are construed with reference to the actual purpose of his employment. But if the language used, regarded in the light of the surrounding circumstances, clearly shows that the agency is intended to be more extensive than that of a broker, the court will so find."

That the courts will take into consideration the surrounding circumstances in construing such contracts is evidenced by the holding of the Supreme Court of the United States in *Lyon* v. *Pollock, supra.* In that case Lyon was a resident of San Antonio, Texas, during the war of the rebellion.    He there owned considerable property.    He was an avowed northern sympathizer.    He was apprehensive that his life was in danger and fled to Monterey, Mexico, where means of communication with San Antonio were hampered.    Taking these things into consideration,

together with the language employed in the letter, the court construed a letter written by him to confer authority upon his agent to enter into a contract of sale of his property located in San Antonio.

The authorities cited by counsel for defendant Mrs. Henning in the main unequivocally hold that while the authority "to sell" found in brokerage contracts authorized the broker to find and produce a purchaser ready, willing and able to buy on the terms specified, that on doing so he has performed his contract and earned his commission, it does not authorize him to enter into a binding contract for his principal, that such authority must be specifically conferred. Language found in many different contracts are held not to grant such authority. An examination of the authorities cited is convincing that the correct rule is announced in Ruling Case Law (4 R. C. L. p. 262) as follows:

"The most serious disagreement in the decisions arises over the question as to whether or not such a broker may enter into a binding contract of sale in behalf of his principal where he is not in express terms authorized to do so. Since it is generally conceded that his only duty is to find a purchaser who is ready, willing, and able to purchase upon the terms specified, the overwhelming weight of authority is to the effect that a broker has no right to conclude and execute a binding contract unless such power is expressly conferred by the use of unequivocal expressions to that effect; that the employment of a real estate broker, as such, or the mere listing of property with him, or the direct instruction to find a purchaser, or any communication from the owner to the broker with respect to the sale of land, will be regarded as giving the agent only the authority to find a purchaser; and that no wider power than that is necessarily indicated by the words 'to sell' or 'to make a sale,' it being a matter of common understanding that even though one uses such terms in soliciting the services of a real estate broker, nevertheless he reserves to him-

self the power to conclude the sale, unless there is an express provision to the contrary."

A valuable note will be found in 17 L. R. A. (N. S.) 210. The editorial writer there says:

"A careful reading of the cases seems to warrant the statement that the question whether a real-estate broker has authority to make a binding contract of sale is generally one of intention, and that the real controversy is not whether the actual grant of authority to sell gives the agent power to execute a contract of sale, but, rather, What form of expression will be deemed to establish an agency to sell, using the term in its broader sense? The inquiry to be determined, then, in each doubtful case, is whether the owner has shown an intention that his agent shall merely find a purchaser, or that he shall go further and actually effect a binding contract of sale. Since it is generally conceded that the only duty of a real-estate broker is to find a purchaser who is ready, willing, and able to purchase upon the terms specified, the overwhelming weight of authority is that the latter intention is not inferred, except from the use of unequivocal expressions to that effect; and that the employment of a real-estate broker, as such, or the mere listing of property with him, or the direct instruction to find a purchaser, or any communication from the owner to the broker with respect to the sale of land, will be regarded as giving the agent only the authority to find a purchaser; and that no wider power than that is necessarily indicated by the words 'to sell,' or 'to make a sale.' To use the often-quoted paragraph from *Keim* v. *Lindley* (N. J. Ch.), 30 Atl. 1063, and adopted in *Keim* v. *O'Reilly*, 54 N. J. Eq. 418 (34 Atl. 1073):

" 'The mere employment of an ordinary real-estate broker to effect a sale of a parcel of land, even though the price and terms be prescribed, does not amount to giving present authority to such broker to conclude a binding contract for the same. Moreover, such authority is not usually to be inferred from the use by the principal and broker, in that connection, of the terms, "for sale," or "to sell," and the like. Those words, in that connection, usually mean no more than to negotiate a sale by finding a purchaser upon satisfactory terms.' "

The same thought is quite tersely stated by the court of appeals of Maryland in *Brown* v. *Hogan,* *supra,* where it was said:

"There are two distinct lines of cases on the question, but those which hold that a broker or agent has an implied power to make a contract of sale of real estate, when he is authorized to obtain a purchaser or to sell, are greatly in the minority."

The use of the words in Exhibit A, "and said Welzeihn & Schulz are authorized to sell said property," etc., did not under the great weight of authority give them power to bind Mrs. Henning by Exhibit B, nor are we persuaded that the use of the words: "I agree to furnish abstract, tax history and merchantable title" evidence such intent. These words, or words of similar purport, are frequently found in listing contracts which come before us for consideration. We should not overlook the fact, in construing Exhibit A, that it was prepared by the brokers, not by Mrs. Henning, and was, as the testimony shows, on one of their printed forms commonly used by them in their brokerage business. We think Exhibit A must be construed as a listing contract only, and while it fixed their obligations *inter se* it did not authorize the brokers to bind Mrs. Henning by an executory contract of sale.

It is not claimed by counsel that the precise question here involved has been in issue before this court. They, however, cite numerous cases from this court which by analogy are thought to be applicable. We shall consider but four of them. *Stuart* v. *Mattern,* 141 Mich. 686, relied on by plaintiffs' counsel, is distinguishable upon its facts. This court there gave the force of authority to a letter written by defendant coupled with ratification by an acceptance of part payment, and part performance by placing the vendees in possession. *Brittson* v. *Smith,* 165 Mich. 222, relied

upon by defendants' counsel, was an action brought to recover for a broker's commission. It was there said:

"Upon the part of the plaintiffs the agreement would be performed when they produced a person able and willing to pay $6,400 or more for the place. Upon the part of the owner, the defendant, the contract would be performed if, when a purchaser was produced by the plaintiffs and $6,400 was paid or tendered him, he conveyed the farm with good title. The intending purchaser could not compel the owner of the farm to convey it to him, or to the plaintiffs."

Plaintiffs' counsel are quite right in saying that the last sentence was not necessary to decision and must be regarded as dictum, and this is likewise true of the other two cases relied on by counsel for Mrs. Henning. The *Brittson Case* was followed in *McGavock* v. *Ducharme,* 192 Mich. 98, where it was said:

"The defendant contends that, if Act No. 238, Public Acts 1913, does not affect the contract, it was invalidated by sections 9509 and 9511, 3 Comp. Laws (3 Comp. Laws 1915, §§ 11975, 11977), on the theory that the contract set up by the plaintiff was not one for services, but one creating an interest in the land or power over it. But this theory was held untenable in *Brittson* v. *Smith,* 165 Mich. 222."

And in *Cain* v. *Masurette,* 196 Mich. 7, another commission case, it was said:

"An agent undertaking to sell, and one undertaking to find a purchaser, are not to be distinguished, as in either case he is required to do no more than find a purchaser who is accepted, and who enters into a binding contract."

None of these cases militate against the conclusion we have reached.

We are convinced that after plaintiffs had decided to buy the property Mrs. Landskroener went over to Mrs. Henning's home, told her they were going to

buy the place at $6,500, that Mrs. Henning expressed her pleasure that they were to be the purchasers as she had known Mr. Landskroener from boyhood, and told her if they had come to her she would have sold for less than the figure named. It is insisted that, relying on this talk, plaintiffs incurred expense in procuring from the bank a loan to make a payment on the contract, that they will be required to pay interest thereon and plaintiffs' counsel invoke the doctrine of estoppel as a basis of relief. We do not think these facts estop Mrs. Henning from invoking the statute of frauds, she not having signed any memorandum, and, as we have shown, her broker not having authority to execute one for her. The plaintiffs are in no better or different position than they would have been had they made an oral agreement to buy the place and in reliance on such oral agreement incurred the expense noted. Manifestly under such circumstances Mrs. Henning would not be bound nor would she be estopped from claiming she was not bound. There has been no part performance by being put in possession, coupled with fraud, as in *Lyle* v. *Munson,* 213 Mich. 250, nor has a deed been executed without protest from the grantor, as in *Craig* v. *Crossman,* 209 Mich. 462, nor has Mrs. Henning appealed to a court of equity to enforce an oral contract within the statute of frauds, as in *Thompson* v. *Hurson,* 201 Mich. 685, where it was held that, having appealed to a court of equity to enforce his equities under such a contract, plaintiff was estopped to invoke the statute of frauds against the equities of the defendant, nor has the purchase price or any part thereof been paid to Mrs. Henning. The case is not one for the application of the doctrine of estoppel.

The trial judge was right in holding that the law side of the court was the proper forum to adjust the rights between Mrs. Henning and Welzeihn & Schulz.

All that Welzeihn & Schulz could now recover would be a money decree; there are as between them no grounds for the interposition of equity. Had Mrs. Henning sought equitable relief and brought them into a court of equity they might there ask to have their rights determined, but none of the defendants invoked equitable jurisdiction, all were brought into a court of equity by other parties. Under these circumstances we think defendant Mrs. Henning may raise the question of jurisdiction.

The decree will be affirmed, with single costs to appellee.

WIEST, C. J., and McDONALD, BIRD, SHARPE, and STEERE, JJ., concurred. CLARK and MOORE, JJ., did not sit.